IN RE WELFARE OF GLEN ALLEN STANGLE.
ST. LOUIS COUNTY WELFARE DEPARTMENT AND
ANOTHER v. ELIZABETH STANGLE.

247 N. W. 2d 419.

November 12, 1976—No. 45716.

*Mathias & Brown, Corrine D. Lynch,* and *Gerald J. Brown,* for appellant.

*Keith M. Brownell,* County Attorney, and *Thomas F. Sjogren,* Assistant County Attorney, for respondent.

Considered and decided by the court without oral argument.

PER CURIAM.

Elizabeth Stangle appeals from a judgment of the St. Louis County District Court granting a petition of the St. Louis County Welfare Department to terminate her parental rights to her son, Glen Allen Stangle. The district court entered the judgment after a trial de novo upon an appeal by Ms. Stangle from a final order of the juvenile court terminating her parental rights.[1] We affirm.

Glen Allen Stangle was born in Duluth, Minnesota, on October 25, 1971, the illegitimate son of appellant. On November 20, 1971, appellant voluntarily admitted herself to St. Luke's Hospital in Duluth complaining of severe backaches and other physical ailments. Her subsequent hysteria led to her transfer to the psychiatric unit of that hospital. The

---

[1] These proceedings were commenced prior to the transformation of the St. Louis County Probate-Juvenile Court by statute into a county court. L. 1973, c. 679. Appeals from county court to district court are now upon the record alone unless the presiding county court judge is not learned in the law. Minn. St. 487.39.

St. Louis County Welfare Department therefore on November 24, 1971, sought and obtained an immediate order from the juvenile court for temporary legal custody of the child, directing his placement in a foster home.

The department then filed a dependency petition in the juvenile court. The child was found dependent on December 6, 1971, and the department was granted protective supervision of the child for a period of 90 days upon the stipulation that appellant and the child would participate in the supervised conditions offered at Hillcrest House. Appellant remained there a relatively short period of time and then removed the child in violation of the earlier court order.

Legal custody was transferred to the department on January 5, 1972, pursuant to a hearing which, although properly noticed, appellant failed to attend. To implement that portion of the order dealing with foster care placement, it was necessary for the department and two police officers to forcefully remove the child from appellant's physical custody.

On January 13, 1972, appellant's provisional discharge from Moose Lake State Hospital, to which she had been committed in 1970 as mentally ill for the second time, was revoked and she was returned to Moose Lake. She remained there for 7 days and then left without authorization.

The ensuing months resulted in increased visitation rights to appellant in conjunction with her referral to the Human Development Center for psychological evaluation and treatment. Physical custody was returned to appellant on August 23, 1972, and full legal custody restored on November 29, 1972, subject to protective supervision by the department.

In December 1972, correspondence from Dr. Jerome Kwako, the child's pediatrician, to the juvenile court indicated his concern with the child's physical care and appellant's apparent psychotic tendencies resulting in her inability to provide adequate physical care for the child. An amended dependency petition was filed with the juvenile court on April 16, 1973, resulting in the temporary transfer of the legal custody of the child to the department on that date. Re ommendations from Dr. Kwako and Dr. Leonard Linnell, on staff at the Development Center, regarding the child's care were received by the court. Summarily, each letter recommended that, as appellant was unable to provide adequate care for the child, the child be placed in foster care.

Although no formal finding of dependency was made, on May 9, 1973, the court ordered the department to conduct protective supervision for a period of 60 days subject to satisfaction by appellant of conditions

enumerated in the order. Included in the conditions was an order that appellant move into Homes, Incorporated, a supervised training program in independent living for persons with special needs or problems. Appellant's failure to fully comply with this requirement led to the transfer of legal custody to the department. The child was again placed in a foster home.

Upon the petition of the welfare department, the juvenile court on October 2, 1973, ordered that appellant's parental rights be terminated. The court specifically found that appellant had demonstrated over a period of time that she is unable to correct the conditions which led to the previous finding of dependency and neglect. Minn. St. 260.221(b)(5). In addition, the court found that appellant was suffering from a personality disorder with paranoid trends rendering her incapable of caring for her child.

On appeal to the St. Louis County District Court, judgment was entered on November 26, 1974, terminating Ms. Stangle's parental rights. The court found that appellant has demonstrated an inability to correct within a reasonable time the conditions upon which the previous finding of dependency and neglect was based. The court further found:

"14. That the mother, Elizabeth Stangle, has been and is presently suffering from a personality disorder with paranoid trends which renders her incapable of caring for a child and enables her to function only minimally in society. Prognosis renders there is little or no hope for change in the future, Ms. Stangle has no insight into her problem and refuses social or psychiatric services.

"15. That since the time the Juvenile Court entered its Order on October 2, 1973, the mother, Elizabeth Stangle, has continued to display symptoms of mental disorder and has been re-hospitalized at Moose Lake State Hospital for treatment of that condition and has not improved to where she would be capable of caring for her child or to function more than minimally in society, nor has she displayed any further insights into her emotional or mental problems.

"16. That the child, Glen Allen Stangle presently presents an adequate medical condition; however, he has demonstrated slow development which has been caused from a lack of environmental stimulation.

"17. That the best interest of the child require that the parental rights of the mother be terminated and that he be placed in a two-parent adoptive home."

The sole issue presented . 'hether there is substantial evidence to support the judgment of '·  district court terminating appellant's

parental rights upon the basis that reasonable efforts, under the direction of the court, have failed to correct the conditions leading to a previous finding of dependency and neglect. Minn. St. 260.221(b) (5).[2]

This court's review requires an evidentiary analysis in conjunction with the particular statutory section upon which the parental rights were terminated, for we have often stated that the petitioner in a termination proceedings has the evidentiary burden to establish the satisfaction of these specific statutory grounds. In application, the lower court must make clear and specific findings which conform to the statute. In re Petition of Zerby, 280 Minn. 514, 160 N. W. 2d 255 (1968); In re Martinson, 287 Minn. 213, 177 N. W. 2d 808 (1970).

We had occasion to interpret Minn. St. 260.221(b) (5) in In re Barron, 268 Minn. 48, 53, 127 N. W. 2d 702, 706 (1964), and concluded that—

"* * * it appears that a proceeding to terminate rights is intended for those situations where it reasonably appears that a condition of dependency or neglect will continue for a prolonged, indeterminate period. * * * An involuntary termination of the relationship in cases of dependency and neglect should be ordered only where the other statutory remedies have failed."

We further stated that if the evidence relied upon in a termination proceeding was identical to that upon which a finding of dependency or neglect was based and did not relate to the period following such an adjudication, its sufficiency to support a termination would be most unlikely.

In the instant case, the district court received evidence of appellant's repeated failure to cooperate with court and welfare department efforts to facilitate her continued care, custody and control of the child. There is also considerable evidence of her successive commitments to Moose Lake State Hospital and the psychiatric unit of St. Luke's Hospital. Medical testimony, while conflicting, exhibits the necessity of medication to control her diagnosed psychotic schizophrenia. Appellant's emotional instability was fully demonstrated by evidence that she is unable to comprehend the nature of her condition and to cooperate in rehabilitative efforts. The court also took testimony relative to the

[2] Minn. St. 260.221(b) (5) provides for termination of parental rights if the following is found to exist: "That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination."

intervening time between the juvenile court and district court's termination hearing.

A review of the record necessitates our conclusion that the district court properly concluded that Minn. St. 260.221(b)(5) had been sufficiently satisfied to support a termination of appellant's parental rights to her son. The judgment is in all respects affirmed.

Affirmed.