**In the Matter of the WELFARE OF the CHILDREN OF K.S.F., a/k/a K.B., Parent.**

**No. A12–0631.**

Court of Appeals of Minnesota.

Oct. 15, 2012.

William Ward, Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, MN, for appellant mother K.S.F.

Michael O. Freeman, Hennepin County Attorney, John March, Assistant County Attorney, Carrie Weber (certified student attorney), Minneapolis, MN, for respondent Hennepin County Human Services and Public Health Department.

Jody M. Alholinna, El–Ghazzawy Law Offices, LLC, Minneapolis, MN, for guardian ad litem Linda Semmer.

Considered and decided by LARKIN, Presiding Judge; WORKE, Judge; and COLLINS, Judge.*

## OPINION

LARKIN, Judge.

Appellant-mother challenges the district court's termination of her parental rights, arguing that (1) the standard of proof in a termination-of-parental-rights proceeding is clear-and-convincing evidence, (2) the record does not clearly and convincingly support the statutory determinations necessary to terminate her parental rights, (3) the evidence does not clearly and convincingly establish that termination is in her children's best interests, and (4) the district court erred by refusing to transfer legal and physical custody of the children to appellant's mother as an alternative permanency option. Because (1) the district court did not clearly err in its findings of fact, (2) the record contains clear-and-convincing support for the district court's determinations that a statutory ground for termination exists and that termination, as opposed to a legal-custody transfer, is in the children's best interests, and (3) the district court's resulting decision to terminate parental rights was not an abuse of discretion, we affirm.

## FACTS

Appellant-mother, K.S.F., has six children: G.J., born March 31, 1992; A.J.,

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

born July 28, 1993; X.F., born October 7, 1994; K.B., born July 17, 2001; and twin girls, J.S.B. and J.A.B., born September 30, 2010. A.J. has a child (appellant's grandchild), K.W., who resided with appellant when the underlying child-protection case began. Only appellant's twins are the subject of this appeal. The twins' father is J.B. J.B.'s parental rights were terminated by default, and he is not a party to this appeal.

Approximately two weeks before the twins were born, appellant moved to Minnesota from Illinois. Medical records indicate that she had almost no prenatal care prior to her hospital admission in Minnesota. The twins were born four weeks prematurely and were underweight at birth: J.S.B. weighed five pounds, twelve and one-half ounces, and J.A.B. weighed just under five and one-quarter pounds. When the twins were born, appellant and her daughter K.B. were living in a homeless shelter in Minneapolis, and appellant did not have any supplies for the twins. On October 4, 2010, appellant and the twins were released from the hospital with a discharge plan that included follow-up visits at the Hennepin County Medical Center (HCMC), as well as home visits from a public-health nurse.

On October 22, the public-health nurse visited appellant at the homeless shelter where she was staying. The nurse reported that the twins were extremely hungry and that appellant had no formula for the twins other than the small bottles that the hospital had sent home with her. Later, appellant, the twins, two of her other children, and appellant's grandchild moved to the People Serving People Homeless Shelter (PSP), where they shared a room with two beds. The public-health nurse cited several concerns about appellant's living situation at PSP, noting that it was chaotic, that appellant "[did not] always feed [the] babies when they appear[ed] hungry, and [did not] change diapers very frequently." The nurse also witnessed the twins being fed from propped bottles and noted that appellant did not seem concerned about the fact that the twins had lost weight. Moreover, appellant did not use the Crisis Nursery service after being referred by the nurse. Finally, the nurse noted that appellant paid very little attention to the twins.

Appellant did not bring the twins to their scheduled one-week checkup in accordance with her hospital discharge plan. However, when the twins were three-weeks old, appellant brought them to HCMC for a wellness check. Appellant also brought her nine-year-old daughter, K.B., and her seven-month-old grandson, K.W., to this appointment. The attending physician observed that K.B. primarily cared for the twins and K.W., and that K.W. nearly fell from the examining table several times. The physician observed K.B. place J.S.B. in a stroller with a blanket over her face. The physician spoke with appellant about the dangers of covering the infants' faces with a blanket, but after leaving and returning to the room, the physician found the twins in the stroller with heavy blankets covering their mouths and noses.

The physician was concerned regarding the twins' weights. Despite repeated instructions to hold the bottle so the infants could drink their formula, appellant left bottles propped on their chests while the children unsuccessfully attempted to drink. Appellant reported that she was feeding the twins one five-ounce bottle split between them—an insufficient amount. The physician concluded that J.A.B. had gained a suboptimal amount of weight after her discharge from the hospital and that J.S.B. had lost weight. J.S.B. was hospitalized

for failure to thrive, and gained weight steadily after her hospital admission.

A report of child maltreatment was made to Hennepin County Human Services and Public Health Department (department), and a finding of maltreatment was made against appellant for neglect of the twins.[1] An emergency-protective-care (EPC) hearing was held on October 27, 2010, and the twins were ordered into out-of-home placement with interim custody awarded to the department. The children have been in foster care placement since that time, except for a trial home visit with appellant from June 6 to August 4, 2011.

On November 22 and 29, 2010, appellant met with a parenting assessor who recommended that appellant: (1) complete a psychiatric evaluation; (2) participate in individual therapy; (3) participate in parenting education; (4) participate in family therapy; (5) utilize the services of PSP to develop family independence; and (6) participate and comply with all medical appointments and recommendations of her children's physicians.

On December 15, the twins were adjudicated children in need of protection or services (CHIPS) pursuant to a settlement agreement. Legal custody of the children was transferred to the department. The district court ordered appellant to follow a case plan that included the following components: (1) follow all recommendation of the parenting assessment; (2) complete a parenting education program; (3) complete a psychiatric consultation if recommended by the psychological assessment; (4) participate in individual therapy; (5) complete family therapy; (6) seek safe and stable housing; (7) cooperate with the children's medical providers and attend appointments; and (8) cooperate with the department's social workers and guardians ad litem.

With the help of PSP, appellant moved into a two-bedroom apartment in late February 2011. However, she was evicted from the apartment in December 2011, and at the time of trial, she lived in the basement of the home that her mother was renting.

Pursuant to her case plan, appellant underwent two psychological examinations. In the first examination, a psychologist at HCMC determined that appellant has intellectual limitations, Borderline Intellectual Ability, and an IQ of 69. A second psychologist diagnosed appellant with Borderline Intellectual Functioning. Both psychologists advised that appellant would need assistance in providing adequate care and parenting to her children.

Appellant was also referred to the Center for Child Abuse Treatment and Prevention and to a public-health nurse for in-home parenting education. She began weekly in-home sessions in March 2011. The in-home parenting worker reported that appellant had "little engagement with the twins." The parenting worker also reported, that although appellant has the ability to understand the parenting information that was provided, she did not apply the information she received. Lastly, the parenting worker reported that she did not see improvement during the eight months that she worked with appellant.

A public-health nurse also worked with appellant to provide parenting education and in-home medical services, with a focus on childhood nutrition, growth, and development. On her first visit, the nurse noted that appellant paid little attention to the twins and did not acknowledge that one of the twins was crying. Appellant had to be

---

1. The child-protection case also involved appellant's teenage daughter, A.J., but because A.J. is not a subject of this appeal, we do not address her circumstances in this opinion.

reminded several times to pick up the child and to feed her. The nurse noted that during her visits, appellant struggled to focus on the twins, needed to be reminded to feed them, and often did not have sufficient food for them. The twins were often left in their car seats, despite encouragement to let them crawl and develop motor skills. Twice, the nurse found the twins sitting in very wet diapers.

The foster parents also observed appellant's difficulties in adequately feeding the twins. In early March, the foster parents picked up the twins after a four-hour visit with appellant, found the twins hungry and crying, and concluded that appellant had missed a scheduled feeding time. In April, appellant called the foster parents to state that she was feeding the twins water because she had no formula. That same month, while the twins were in appellant's care for an overnight visit, appellant failed to bring them to their scheduled well-baby checkup. When the foster parents inquired about the appointment, appellant lied and said that she had taken the twins to the appointment. She later acknowledged that she missed the appointment and failed to reschedule for many weeks.

In May, the twins had an early-childhood assessment and qualified for fine-motor-skills assistance because both children showed delays. Appellant did not pursue the recommendations for early-childhood special-education services.

On June 6, the twins were returned to appellant for a trial home visit. At the time, appellant was residing with her mother, A.B. When the nurse visited the home on June 22, she observed that appellant had very little food for the twins and had unused WIC coupons that expired at the end of the month. The nurse prepared a feeding schedule for appellant because she was concerned that the twins were not being fed regularly. In fact, the twins'

rate of weight gain slowed in July, and they gained only one pound during June and July rather than one-and-a-half pounds, as would be expected. During her visits, the nurse noted that appellant was often tired and lying down, had to be reminded to let the twins move around, and did not have a strong bond with the twins. Instead, she noted that the twins had a stronger bond with their grandmother, A.B. The nurse did not see an improvement in appellant's parenting abilities and did not believe that appellant could perform basic parenting tasks.

During the trial home visit, the social worker also observed appellant's inattentiveness to her children. The social worker reported that the children were dirty with unchanged diapers, hungry, and dressed inappropriately for the temperature. In addition, the social worker reported that appellant had called 911 on July 14, to report that J.S.B. was choking and not breathing and had called 911 again on July 30, to report that J.A.B. was not breathing. Both of the children were fine and breathing normally when the paramedics arrived, but the social worker did not learn of the incidents until several days after they occurred and could not get specific information from appellant regarding what had happened.

The twins' guardian ad litem had concerns that they were not adequately supervised during the trial home visit. During one unannounced visit, the guardian ad litem observed two of appellant's older children caring for the twins when appellant was not present. When the twins were picked up in early August to be returned to their foster home, they had been left alone with appellant's daughter A.J., who has a significant history of mental-health problems and whose own parental rights to a child have been terminated.

At the end of July, the social worker, public-health nurse, parenting educator, and the children's guardian ad litem met to discuss the trial home visit. They agreed that appellant's parenting skills had not improved and that the children were at risk of harm in appellant's care. On August 5, the children were returned to foster care. Initially, appellant had visitation with the twins twice per week, but due to appellant's attendance difficulty, the visits were reduced to once per week. Appellant's parenting education continued during her visits, but appellant failed to attend two visits and failed to attend a doctor's appointment for the twins at HCMC.

In September, the department held a family group conference, at which three possible placements for the twins were explored: reunification with appellant, placement with appellant's mother, A.B., and placement with appellant's adult sibling. The department was concerned about reunification because of the failed trial home visit and because neither appellant's mother nor her relatives had acquired the necessary foster-care licensure for a transfer of legal custody (TLC). The social worker supported a termination of parental rights (TPR) rather than a TLC because she did not see A.B. making enough progress toward obtaining her licensure. The children's guardian ad litem also believed that a TPR would be in the children's best interests because A.B. lacked stable housing. Therefore, the department decided to pursue a TPR.

A petition to terminate appellant's parental rights to the twins was filed on October 11, 2011. An alternative pleading, requesting a TLC to appellant's mother, A.B., was also filed. A permanency review hearing was held on October 17, and continued foster care was ordered. On January 17 and February 13, 2012, a TPR trial was held. The district court filed an order on March 14, terminating appellant's parental rights to the twins under Minn.Stat. § 260C.301, subd. 1(b)(2), (4), (5), and (8) (2010).

The district court found that reasonable efforts were provided to appellant to prevent foster-care placement and to return the twins to her care, but that these services had not corrected the conditions leading to the out-of-home placement. The district court concluded that appellant neglected her parental duties and was palpably unfit to be a party to the parent-child relationship, that reasonable efforts had failed to correct the conditions that led to her children's placement in foster care, that her children were neglected and in foster care, and that termination of appellant's parental rights is in the best interests of the twins. Finally, the district court concluded that a TPR, rather than a TLC to appellant's mother A.B., is in the children's best interests because A.B. did not testify, she had only recently obtained housing, a home study had not been completed, and there was no testimony regarding the suitability of A.B.'s housing. Moreover, the district court noted that appellant continued to live with A.B. and it would be unacceptable for her to continue to provide care for the twins. This appeal follows.

## ISSUES

I. What standard of proof applies in a termination-of-parental-rights proceeding?

II. Are the district court's statutory determinations regarding termination of appellant's parental rights supported by clear-and-convincing evidence?

III. Is the district court's determination that termination of appellant's parental rights is in the children's best

interests supported by clear-and-convincing evidence?

IV. Did the district court err in terminating appellant's parental rights rather than transferring legal custody to appellant's mother?

## ANALYSIS

### I.

We first address the appropriate standard of proof in a TPR proceeding. Appellant observes that the department, in its brief to this court, repeatedly refers to "'substantial evidence' as being the quantum of evidence required to prove a termination of parental rights" and argues that the correct standard of proof is clear-and-convincing evidence. Appellant suggests that because the department "has reviewed the sufficiency of the evidence using the wrong standard, its argument as to sufficiency, [at pages 16–30 of its brief], should be disregarded."

 Appellant correctly asserts that the standard of proof in a TPR proceeding is clear-and-convincing evidence. *See* Minn. Stat. § 260C.317, subd. 1 (2010) ("If, after a hearing, the court finds by clear and convincing evidence that one or more of the conditions set out in section 260C.301 [listing grounds for termination of parental rights] exist, it may terminate parental rights."); *see also* Minn. R. Juv. Prot. P. 39.04, subd. 2. ("[I]n a termination of parental rights or other permanency matter involving a non-Indian child, the standard of proof is clear and convincing evi-

dence.").[2] The department's reference to "substantial evidence" stems from its citation to *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381 (Minn.2008). Although the supreme court in *S.E.P.* recognized that the standard of proof in a TPR case is clear-and-convincing evidence, the supreme court referred to "substantial evidence" throughout its opinion. For example, after stating, "[w]e closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing," and that the supreme court would "affirm the district court's termination of parental rights when at least one statutory ground for termination is supported by clear and convincing evidence," the supreme court went on to conclude that "at least one statutory ground for termination ... is supported by substantial evidence."[3] *Id.* at 385, 387. Moreover, the supreme court's syllabus point states, "[s]ubstantial evidence existed on the record to support termination of mother's parental rights to her children." *Id.* at 382.

Because *S.E.P.* uses the "substantial evidence" phraseology, it is not surprising that the department would refer to "substantial evidence" as the necessary quantum of proof in this case. Despite the department's use of the "substantial evidence" language from *S.E.P.*, this court recognizes that the supreme court has explicitly required appellate courts to "study the record carefully to determine whether the evidence is clear and convincing." *In re Welfare of Children of R.W.*, 678

2. The clear-and-convincing-evidence standard of proof also applies in a proceeding to determine whether a child is in need of protection or services. *See* Minn. Stat § 260C.163, subd. 1(a) (2010) ("To be proved at trial, allegations of a petition alleging a child to be in need of protection or services must be proved by clear and convincing evidence."); *see also* Minn. R. Juv. Prot. P. 39.04, subd. 1 ("In a child in

need of protection or services matter, the standard of proof is clear and convincing evidence.").

3. The court also used the phrase "substantial evidence" when concluding that the district court's findings regarding reasonable efforts and best interests were adequate. *S.E.P.*, 744 N.W.2d at 387.

N.W.2d 49, 55 (Minn.2004). Nevertheless, we take this opportunity to discuss the reference to "substantial evidence" in *S.E.P.* in an effort to provide clarity.

The original source for the current references to "substantial evidence" in TPR caselaw predates current juvenile-protection statutes, rules, and cases that explicitly recite the clear–and–convincing standard of evidence. The direct lineage of the supreme court's reference to "substantial evidence" in *S.E.P.* traces back to a 1978 supreme court opinion in a TPR case where the supreme court stated that "[w]here the findings of fact of the juvenile court are supported by substantial evidence and are not clearly erroneous, they will not be reversed." *In re Welfare of J.M.S.*, 268 N.W.2d 424, 428 (Minn.1978). This reference in *J.M.S.* to "substantial evidence" is consistent with references to "substantial evidence" in even earlier TPR opinions of the supreme court. *See In re Welfare of Kidd*, 261 N.W.2d 833, 836 (Minn.1978) (affirming a termination of parental rights because "there [was] substantial evidence to support the determination that appellant's demonstrated behavior stemming from a projected permanent mental condition is 'other conduct' likely to be detrimental to the health and welfare of the child within the meaning of [the then existing termination statute]"); *In re Welfare of Stangle*, 311 Minn. 518, 520–21, 247 N.W.2d 419, 421 (1976) (stating that "[t]he sole issue presented is whether there is substantial evidence to support the judgment of the district court terminating appellant's parental rights...").

For its passing reference to "substantial evidence," *J.M.S.* relied, in part, on Minn. R. Civ. P. 52.01. 268 N.W.2d at 428. In an opinion issued on June 2, 1978, a month before *J.M.S.*, however, the supreme court specifically addressed the standard of proof applicable in TPR proceedings, holding that the standard of proof in TPR cases is clear-and-convincing evidence:

> Although the Juvenile Court Act ... does not specify the degree of proof required to terminate parental rights, and this court has not explicitly done so in past cases, consideration of those cases reveals that in fact we have required clear and convincing proof to uphold their termination. We now hold explicitly that this degree of proof is required to justify termination of parental rights.

*In re Welfare of Rosenbloom*, 266 N.W.2d 888, 889–90 (Minn.1978). By July 1, 1978, the clear-and-convincing-evidence standard that formed the holding of *Rosenbloom* had been incorporated into the rules applicable to juvenile matters. *See* Minn. R. Juv. Ct. Proceedings 5–7(1)(a) (1978) (stating that if, after an "adjudicatory hearing in a termination-of-parental rights cause[,]" the district court believes that the cause has "[not] been proved by clear and convincing evidence[,]" the district court "shall enter an order dismissing the proceeding"). This requirement of clear-and-convincing evidence is still present in the current juvenile-protection rules. Minn. R. Juv. Prot. P. 39.04, subd. 2 (stating that "in a termination of parental rights or other permanency matter involving a non-Indian child, the standard of proof is clear and convincing evidence").

Further, after the court system's 1978 adoption of the clear-and-convincing-evidence standard for termination matters, the legislature, in 1980, explicitly incorporated the clear-and-convincing standard of proof into the juvenile statutes. *See* 1980 Minn. Laws ch. 561, § 11 (inserting into then-existing Minn.Stat. § 260.241, subd. 1 (1978), the requirement that a basis for terminating parental rights be found "by clear and convincing evidence"). That codification of the clear-and-convincing-evi-

dence standard was retained when, in 1999, the legislature restructured the statutes addressing juvenile matters. *See* 1999 Minn. Laws ch. 139, art. 3, § 33 (enacting what is now Minn.Stat. § 260C.317, subd. 1 (2010) and including in it a provision stating that "[i]f, after a hearing, the court finds by clear and convincing evidence that one or more of the conditions set out in section 260C.301 exist, it may terminate parental rights."); *see generally* 1999 Minn. Laws ch. 139 (restructuring the juvenile statutes by putting general juvenile matters in chapter 260, truancy matters in chapter 260A, juvenile-delinquency matters in chapter 260B, and juvenile-protection matters in chapter 260C).

Moreover, the supreme court's most recent statement of the standard of proof for termination matters requires clear-and-convincing evidence to terminate a parent's parental rights. *See In re Welfare of the Children of T.R.*, 750 N.W.2d 656, 661, 664 (Minn.2008) (stating that "if at least one statutory ground alleged in the petition is supported by clear and convincing evidence ... we will affirm" and concluding that the record did not "support by clear and convincing evidence" the district court's determination that a statutory ground for termination had been proved); *see also R.W.*, 678 N.W.2d at 55 (stating that "[t]ermination of parental rights will be affirmed as long as at least one statutory ground for termination is supported by clear and convincing evidence").

Finally, we note that that the current rules of Juvenile Protection Procedure state that "[e]xcept as otherwise provided by statute or these rules, the Minnesota Rules of Civil Procedure do not apply to juvenile protection matters." Minn. R. Juv. Prot. P. 3.01. Because the Juvenile Protection Rules now explicitly state that the standard of proof in termination mat-

ters is clear-and-convincing evidence, Minn. R. Juv. Prot. P. 39.04, subd. 2, Minnesota Rule of Civil Procedure 52.01, which *J.M.S.* cited when it referred to "substantial evidence," is no longer generally applicable to juvenile-protection matters. Thus, for almost 35 years, the courts and the legislature have unequivocally and unambiguously required clear-and-convincing evidence to support the termination of parental rights.

In summary, appellant correctly asserts that the standard of proof in a proceeding to terminate parental rights is clear-and-convincing evidence. But we reject appellant's suggestion that this court should disregard the department's briefing regarding whether or not the evidence is adequate to support termination because the department referred to "substantial," rather than "clear-and-convincing," evidence. Instead, we apply the clear-and-convincing-evidence standard, as directed by the supreme court. *See T.R.*, 750 N.W.2d at 661.

II.

■■■ We review the district court's findings in a TPR proceeding to determine whether they address the statutory criteria for termination and are not clearly erroneous, *id.* at 660, in light of the clear-and-convincing standard of proof. A finding is clearly erroneous if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* at 660–61. We defer to the district court's decision on termination if at least one statutory ground for termination is supported by clear-and-convincing evidence and termination is in the children's best interests. *Id.* at 661; *see also In re Welfare of the Children of J.R.B.*, 805 N.W.2d 895, 899 (Minn.App.2011) (explaining that so long as the record provides clear-and-convincing support for ter-

mination, an appellate court reviews the district court's decision to terminate parental rights for an abuse of discretion), *review denied* (Minn. Jan. 6, 2012).

The district court ordered termination of appellant's parental rights on several statutory grounds, including Minn.Stat. § 260C.301, subd. 1(b)(2), which authorizes a court to terminate parental rights if it finds

> that the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent and child relationship, including but not limited to providing the child with necessary food, clothing, shelter, education, and other care and control necessary for the child's physical, mental, or emotional health and development, if the parent is physically and financially able, and either reasonable efforts by the social services agency have failed to correct the conditions that formed the basis of the petition or reasonable efforts would be futile and therefore unreasonable....

 Failure to satisfy requirements of a court-ordered case plan provides evidence of a parent's noncompliance with the duties and responsibilities under section 260C.301, subdivision 1(b)(2). *In re Child of Simon,* 662 N.W.2d 155, 163 (Minn.App. 2003). The district court found that appellant failed to satisfy the requirements of her case plan. Appellant assigns several errors to the district court's findings regarding her case-plan compliance. She argues that the district court erred in finding that she had not successfully completed her in-home parenting education. However, the public-health nurse and the guardian ad litem testified that they did not see any improvement in appellant's parenting skills, despite her participation in in-home parenting education. Although the parenting educator did not testify at trial, her

reports were received as exhibits and indicate that appellant was not adequately applying the information she received in the program. The district court's finding that appellant had not successfully completed her parenting education is not clearly erroneous.

Appellant also argues that the district court clearly erred in finding that she did not follow all of the recommendations of the parenting assessment and that she did not attend multiple medical appointments. One of the recommendations in appellant's parenting assessment was that she participate in and attend all of her children's medical appointments. Appellant did not attend medical appointments for the twins in April and December 2011. The district court's finding that appellant did not follow the recommendations of her parenting assessment is not clearly erroneous.

Lastly, appellant argues that the district court clearly erred in finding that she was uncooperative or untruthful during her psychological assessment. However, the record shows that appellant's doctor reported that she did not answer all questions when asked and that she missed appointments. The district court's finding that she had been uncooperative or untruthful during her psychological assessment is not clearly erroneous.

Appellant argues that there is no evidence that she refused to comply with the duties of the parent-child relationship because she complied with the case plan "to the best of her abilities." Even though appellant may have complied with the case plan to the best of her abilities, the record contains clear-and-convincing evidence that appellant "substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon [her] by the parent and child relationship." Minn. Stat. § 260C.301, subd. 1(b)(2). Despite education and instruction from parenting

educators, her social worker, and doctors, appellant continued to provide the twins with inadequate nutrition. The children did not gain adequate weight while in appellant's care. J.S.B. was diagnosed with failure to thrive, and J.A.B. had suboptimal weight gain. Appellant used a propped bottle to feed the twins, even though she was instructed not to use this method. Appellant failed to keep an adequate amount of formula or food in the home for the twins, even though she was provided financial assistance for this purpose. Appellant did not adhere to a feeding schedule, even though the public-health nurse prepared a schedule for appellant to ensure that the twins were fed regularly. Additionally, despite instruction, appellant failed to interact with the twins and to give them opportunities to crawl, resulting in delayed language and motor skills. Despite a professional recommendation, appellant failed to register the twins for early-childhood services to address their developmental delays. Appellant also missed necessary medical appointments for the twins and struggled to find and maintain stable housing, even though she was provided with financial assistance for housing.

█ Appellant contends that because "reasonable efforts[4] were offered, accepted and completed, the reasons for the out-of-home placement must have been alleviated, and clear and convincing evidence therefore does not exist to support termination...." But there is no presumption that completion of a case plan necessarily equates with a correction of the conditions that led to the out-of-home placement. *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 89 (Minn.App.2012). Rather, the issue is "whether the parent is presently able to assume the responsibilities of caring for the child." *Id.* As discussed above, although appellant may have completed the case plan to the best of her ability, the record clearly and convincingly shows that appellant did not improve her parenting skills to a degree that corrected the conditions that formed the basis for the TPR petition. As the social worker testified: "[Appellant] has worked with the case plan to the best of her ability, but I think her abilities have been marginal and have not, in fact, provided the necessary care that we would like to see in child protection for vulnerable twins."

Because the record clearly and convincingly supports the district court's conclusion that appellant failed to comply with her parental duty to meet her children's physical, mental, and emotional needs despite her physical and financial ability to do so and that reasonable efforts failed to correct the conditions underlying the TPR petition, the district court did not abuse its discretion in terminating appellant's parental rights under Minn.Stat. § 260C.301, subd. 1(b)(2). Because one statutory ground for termination is supported by clear-and-convincing evidence, we do not review the district court's conclusions regarding the other statutory grounds relied on by the district court.

---

4. Appellant's challenge to the district court's reasonable-efforts determination is limited to her assertion that "if the [department's] case plan, when completed, did not alleviate the conditions which led to the out of home placement, then the case plan was inadequate," and that "if completion of the case plan does not correct the conditions, then the case plan must logically be inadequate and thus out of compliance" with statute. We are not persuaded. The district court's order for termination extensively addresses the department's efforts to reunify appellant and her children. We discern no reversible error in the district court's findings or legal conclusion that reasonable efforts were provided by the department.

### III.

■ In every termination proceeding, "the best interests of the child must be the paramount consideration." Minn.Stat. § 260C.301, subd. 7 (2010). Even if a statutory ground for termination exists, the district court must still find that termination of parental rights or of the parent-child relationship is in the best interests of the child. *In re Children of T.A.A.*, 702 N.W.2d 703, 708 (Minn.2005). In considering the child's best interests, the district court must balance the preservation of the parent-child relationship against any competing interests of the child. *In re Welfare of M.G.*, 407 N.W.2d 118, 121 (Minn. App.1987). "Competing interests include such things as a stable environment, health considerations and the child's preferences." *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn.App.1992). "Where the interests of parent and child conflict, the interests of the child are paramount." Minn.Stat. § 260C.301, subd. 7.

■ The district court's conclusion that termination of appellant's parental rights is in the children's best interests is supported by eight specific findings that address appellant's present and future inability to safely care for the children or to provide for their needs, the children's need for a stable and safe home that can meet their needs, the children's need for stability and predictability, appellant's limited bond with the children, and appellant's competing interests. The district court reasoned that because the bond between appellant and the children is not their primary bond, "the severance of the parental relationship and any resulting detriment to [appellant] is outweighed by the benefit to the children of termination of parental rights and adoption." We discern no error in the district court's findings, analysis, or conclusion.

Appellant argues that she loves her children and that "[n]o child's best interests are served by permanent separation from a loving and caring mother." In weighing the competing interests of a parent and her children, a mother's love and desire to care for her children does not outweigh her children's needs for basic care and adequate nutrition. This record, in light of the clear-and-convincing standard of proof, supports the district court's determination that termination is in the children's best interests.

### IV.

Appellant argues that the district court erred in refusing to transfer legal custody to appellant's mother, A.B., rather than terminating her parental rights. The district court considered a TLC to A.B., but determined that a transfer of permanent legal and physical custody to A.B. is not in the children's best interests.

■ When considering a TLC as a permanency option, the district court must first review the suitability of the prospective legal and physical custodian. *See* Minn.Stat. § 260C.201, subd. 11(d)(1)(i) (2010) ("[A]n order for transfer of permanent legal and physical custody to a relative shall only be made after the court has reviewed the suitability of the prospective legal and physical custodian...."); *In re Welfare of the Children of A.I.*, 779 N.W.2d 886, 895 (Minn.App.2010), *review dismissed* (Minn. Apr. 20, 2010). The evidence presented at trial does not establish that A.B. is a suitable prospective legal and physical custodian. The district court explained that

> [A.B.] did not testify and only recently obtained housing. A home study has not been completed. There was no testimony about the suitability of her housing beyond [appellant's] testimony. [A.B.] had 16 months to obtain housing

and did not do so until the eve of trial. [Appellant] lives in the home and it is unacceptable that she might continue to provide care for the children in a set-up similar to the trial home visit. The Court cannot conclude that [A.B.] is a suitable custodian at this time . . .

Given the level of familial dysfunction and [appellant's] parenting deficits, the Court agrees with the Guardian ad litem and other professionals that a termination of parental rights freeing the [children] for adoption is in the [children's] best interests.

We discern no error in the district court's findings, analysis, or conclusion on this issue. We observe that even though appellant informed this court, at oral argument, that A.B. was present in the courtroom during the trial in district court, appellant did not call A.B. as a witness to establish her willingness to take legal custody of the children. We are hard pressed to assign error to the district court's implicit determination that A.B. is not a suitable proposed custodian when A.B. did not personally indicate to the district court that she is willing to take custody of the children.

Appellant contends that when deciding among permanency options, the courts should apply a preference for a TLC to relatives. Appellant cites no persuasive legal authority for this proposition. In fact, this court has held that "[t]ransfer of permanent physical and legal custody is not necessarily preferred over termination of rights, and is expressly governed by the children's best interests." *Id.*

Because the record provides clear-and-convincing support for the district court's determination that the children's best interests are best served by a TPR and not by a TLC to A.B., we defer to the district court's decision in this regard. *See J.R.B.,* 805 N.W.2d at 901 (explaining that the district court has broad discretion when determining issues of child custody, including termination, so long as the district court addressed the proper statutory criteria and the record clearly and convincingly establishes the criteria).

### DECISION

The district court's findings are not clearly erroneous. And clear-and-convincing evidence supports the district court's determinations that a statutory ground for termination of appellant's parental rights was established under Minn.Stat. § 260C.301, subd. 1(b)(2), and that termination of parental rights is in the children's best interests, unlike a transfer of legal and physical custody to the children's maternal grandmother. We therefore affirm.

**Affirmed.**