*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1353**

In the Matter of the Welfare of the Children of:
A. S. and L. S., Jr., Parents.

**Filed February 13, 2017
Affirmed
Bjorkman, Judge**

Lyon County District Court
File No. 42-JV-16-42

Kyle O'Dwyer, Runchey, Louwagie & Wellman, PLLP, Marshall, Minnesota (for appellants A.S. and L.S., Jr.)

Richard R. Maes, Lyon County Attorney, Nicole A. Springstead, Assistant County Attorney, Marshall, Minnesota (for respondent Southwest Health and Human Services)

Sara Larson, Marshall, Minnesota (guardian ad litem)

Considered and decided by Peterson, Presiding Judge; Johnson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant-parents challenge the termination of their parental rights to three children and the denial of a counter-petition to transfer permanent custody to the children's paternal grandfather. Because clear and convincing evidence demonstrates that reasonable efforts

by the county failed to correct the conditions leading to the children's out-of-home placement and termination is in the children's best interests, we affirm.

## FACTS

Appellant-mother A.S. and appellant-father L.S., Jr. are the parents of three children born in 2011, 2012, and 2013. In May 2015, the family began receiving in-home services from respondent Southwest Health and Human Services (the county). Jennifer Syverson, an intensive in-home family-based county employee, was assigned to work with the family. Syverson developed many concerns about the children's welfare. The children exhibited poor hygiene and were frequently covered in dirt and food and dressed in dirty clothing. Syverson observed that the home was cluttered and filthy; the children's mattresses were blackened by dirt. The parents fought frequently in front of the children, and Syverson regularly had to remind mother to take her mental-health medications. Finally, Syverson had concerns regarding parents' drug use.

On September 17, 2015, the county filed a petition alleging the children were in need of protection or services (CHIPS). The petition alleged that the children were without proper parental care and their behavior, condition, or environment was injurious or dangerous to them. On November 13, the district court ordered the children to be placed with their paternal grandfather, where they remained throughout the proceedings. Following a hearing, the district court adjudicated the children as CHIPS.

On April 13, 2016, the county filed a petition seeking termination of parental rights. The petition alleged termination is warranted because the parents failed to satisfy the duties of the parent-child relationship and were palpably unfit to parent, that reasonable efforts

2

by the county did not correct the conditions that led to the children's out-of-home placement, and that the children were neglected and in foster care. *See* Minn. Stat. § 260C.301, subd. 1(b)(2), (4), (5), (8) (2016). Father filed a counter-petition asserting that if the district court found that permanent placement outside of the parents' care is necessary, legal and physical custody should be transferred to grandfather. *See* Minn. Stat. § 260C.515, subd. 4 (2016).

Following a one-day trial on June 28, the district court terminated mother and father's parental rights. The district court determined that the county had proved all three statutory grounds for termination by clear and convincing evidence. And the court denied the counter-petition after finding that transfer of permanent physical and legal custody to grandfather was not in the children's best interests. Parents appeal.

### DECISION

Parental rights may be terminated "only for grave and weighty reasons." *In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 709 (Minn. App. 2004). Termination requires clear and convincing evidence that (1) the county has made reasonable efforts to reunite the family, (2) there is a statutory ground for termination, and (3) termination is in the children's best interests. *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). We review the district court's factual findings "to determine whether they address the statutory criteria for termination and are not clearly erroneous, in light of the clear-and-convincing standard of proof." *In re Welfare of Children of K.S.F.*, 823 N.W.2d 656, 665 (Minn. App. 2012) (citation omitted). And we review for abuse of discretion a district court's conclusion that the statutory requirements for termination have been established.

3

*In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 900-01 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012).

I. **The district court did not abuse its discretion by concluding that reasonable efforts failed to correct the conditions that led to the children's out-of-home placement.**

A statutory ground for terminating parental rights is present if clear and convincing evidence shows that reasonable efforts have failed to correct the conditions leading to the children's out-of-home placement. Minn. Stat. § 260C.301, subd. 1(b)(5). It is presumed that reasonable efforts have failed upon a showing that (1) a child has resided outside the parental home for six months unless parents have maintained regular contact with the children, (2) the court has approved an out-of-home placement plan, (3) the conditions leading to a child's out-of-home placement have not been corrected, and (4) reasonable efforts have been made by the social services agency to rehabilitate and reunite the family. *Id.* It is also presumed that the conditions leading to out-of-home placement have not been corrected upon a showing that a parent has not "substantially complied with the court's orders and a reasonable case plan." *Id.*

Parents argue that the district court abused its discretion because the conditions that led to the children's out-of-home placement have been corrected and they have substantially complied with their case plans. Careful review of the record defeats parents' contentions.

First, it is undisputed that the children had resided outside of parents' home for more than seven months at the time of trial. And the record demonstrates parents did not maintain regular contact with the children during that time. Kayla Bigelbach, a social

4

worker who worked with the family from July 2015 until May 2016, testified that parents did not regularly attend scheduled visits with the children. When they did attend, they did not appropriately care for the children. The county discontinued mother's visits in February 2016 and father's visits were cut short because he became frustrated with the children. Bigelbach encouraged mother to make efforts to reinitiate visitation, but mother failed to do so.

Second, the district court approved out-of-home placement plans addressing the issues that brought this family to the court's attention. The county created separate case plans for each child. But the plans provided the same services to the family and imposed the same requirements on parents. And parents do not challenge the plans or the reasonableness of the county's efforts to provide services under them and to reunite the family.

Third, we discern no clear error in the district court's findings that parents have not corrected the conditions that led to the children's out-of-home placement. The children were removed from parents' home because parents were unable to meet the children's needs and parents' behavior and the home environment were dangerous for the children. Of primary concern was the unsuitable condition of the family home. The out-of-home placement plan required parents to provide a safe home for the children. They failed to do so. At the time of trial, neither parent had obtained housing that would be suitable for the children.

Moreover, parents were not complying with other aspects of their case plan. Sara Larson, the guardian ad litem, recommended termination of parental rights because parents

5

were not engaged in the case plan and lacked the ability to meet the needs of their children. Syverson likewise testified that she saw "minimal to little progress" in the parents' parenting skills during the time she worked with the family. And the individuals who assessed each party's parenting capacity both recommended termination because despite "all efforts made to help this family to better parent their children the parents were not able to engage."

Bigelbach testified that parents were not in compliance with their case plans because they failed to, among other things, attend all educational meetings, address their lack of parenting skills, and attend anger-management training. Mother challenges the determination that she did not address her mental-health issues, but admitted she did not attend every therapy meeting and was not medication compliant. Mother also failed to adequately address her chemical-dependency issues.

Father notes (and the district court observed) that he completed some aspects of his case plan. We agree, but the record supports the district court's finding that father was not in substantial compliance with his plan. Father made efforts to address his chemical-dependency issues and made some efforts to cooperate with the county. But father failed to satisfy other requirements of his case plan, notably that he secure suitable housing for the children and address the deficiencies in his parenting skills. Father was also required to complete anger-management training. He did not do so, despite the fact that his supervised visits with the children were often cut short because he became frustrated with them.

In short, the statutory presumption that reasonable efforts failed to correct the conditions leading to out-of-home placement applies, and parents did not rebut it. Because the district court's findings address this statutory-termination ground and are not clearly erroneous, we discern no abuse of discretion.[1]

**II.    The district court did not abuse its discretion in determining transfer of permanent legal and physical custody to grandfather was not in the children's best interests.**

Adoption by consent or following termination of parental rights is a "preferred permanency option[] for a child who cannot return home." Minn. Stat. § 260C.513(a) (2016). But a district court may order transfer of permanent legal and physical custody to a relative if it is in the children's best interests. Minn. Stat. § 260C.515, subd. 4. The district court must consider the following best-interests factors:

> (1)    the child's current functioning and behaviors;
> (2)    the medical needs of the child;
> (3)    the educational needs of the child;
> (4)    the developmental needs of the child;
> (5)    the child's history and past experience;
> (6)    the child's religious and cultural needs;
> (7)    the child's connection with a community, school, and faith community;
> (8)    the child's interests and talents;
> (9)    the child's relationship to current caretakers, parents, siblings, and relatives;
> (10)    the reasonable preference of the child, if the court . . . deems the child to be of sufficient age to express preferences.

---

[1] Because we conclude that reasonable efforts have failed to correct the conditions leading to the children's out-of-home placement, *see* Minn. Stat. § 260C.301, subd. 1(b)(5), we do not consider the remaining statutory termination grounds. *See J.R.B.*, 805 N.W.2d at 906 (holding that this court may affirm a termination of parental rights if at least one statutory basis for termination is present and termination is in the child's best interests).

Minn. Stat. § 260C.212, subd. 2(b) (2016). We review a district court's decision regarding whether to transfer legal custody for an abuse of discretion. *In re Welfare of Children of A.I.*, 779 N.W.2d 886, 895 (Minn. App. 2010), *review dismissed* (Minn. Apr. 20, 2010).

Parents' best-interests argument focuses on the district court's denial of father's counter-petition to transfer permanent legal and physical custody to grandfather. Indeed, they do not challenge the best-interests findings related to their interests. Rather, they argue that transfer of custody to grandfather is in the children's best interests because, apart from parents, he has been the only constant adult presence in the children's lives. Parents acknowledge that grandfather's care of the children was not perfect, but stress that he loves the children, quit work to care for them, and made efforts to ensure they went to school. The district court likewise noted that grandfather cared deeply for the children, but ultimately determined that transfer of custody to grandfather was not in the children's best interests.

The district court made thorough best-interests findings, including credibility determinations to which we defer. *In re Welfare of Child of D.L.D.*, 771 N.W.2d 538, 545 (Minn. App. 2009). The district court observed that grandfather was living in the home at the time it was unsafe and in disarray but made no efforts to abate the hazards to the children. He and the children remained in the home after the children were removed from parents' care. Syverson indicated that the home was clean and organized during scheduled visits, but on the occasions grandfather forgot she was coming the home would be cluttered and there would be dirty dishes in the sink. The district court determined that grandfather, absent involvement from the county, would not follow through on meeting the children's

educational, medical, and mental-health needs. The record supports these determinations. Bigelbach testified that grandfather failed to bring the children to several medical appointments, needed assistance or was unwilling to schedule other appointments, and resisted the school's recommendation that the children participate in an IEP program. Grandfather objected to the children's participation in therapy even after outside providers recommended it. And both Bigelbach and Larson expressed concern about the children's aggressive behavior while in grandfather's care. Finally, the district court noted that grandfather had a history of not cooperating with the recommendations of county workers.[2] These determinations all relate directly to the statutory factors the district court was required to consider under Minn. Stat. § 260C.212, subd. 2(b).

It is clear to us that grandfather loves the children and attempted to properly care for them. But the district court's best-interests findings are clearly supported by convincing evidence. On this record, we conclude that the district court did not abuse its discretion in determining that transfer of permanent legal and physical custody to grandfather was not in the children's best interests.

**Affirmed.**

---

[2] When the county initially began providing services to the family in May 2015, grandfather stated that he did not believe the county needed to be involved. The parent mentor assigned to work with grandfather discontinued services because he did not follow her recommendations. Additionally, grandfather claims that he followed the county's recommendation that he create a separate play area for the children with age appropriate toys, but would not show the area to several county workers because he did not feel it was "anybody else's business."