*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0592**

In the Matter of the Welfare of the Child of: T. B. and D. E., Parents.

**Filed October 13, 2025**
**Affirmed**
**Connolly, Judge**

St. Louis County District Court
File No. 69DU-JV-24-239

Benjamin Kaasa, Benjamin Kassa Law Office, PLLC, Duluth, Minnesota (for appellant mother)

Kimberly J. Maki, St. Louis County Attorney, Jennifer J. Barry, Assistant County Attorney, Duluth, Minnesota (for respondent county)

D. E., Superior, Wisconsin (pro se respondent/father)

Angela Sonsalla, Perham, Minnesota (for GAL)

Considered and decided by Harris, Presiding Judge; Connolly, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

Appellant challenges the termination of her parental rights, arguing that the record does not support the district court's rulings that (1) reasonable efforts failed to correct the conditions leading to her child's out-of-home placement, (2) the child was neglected and in foster care, (3) the county made reasonable efforts to reunite the family, and (4) termination of appellant's parental rights was in the child's best interests. We affirm.

## FACTS

Appellant T.B., then 17, gave birth to V.N. on July 8, 2023. V.N. was placed out of appellant's care on August 14, 2023, because appellant smoked marijuana outside the shelter to which she and V.N. had been taken. They were then asked to leave the shelter. V.N., now 27 months old, has been in foster care since then. On August 18, 2023, respondent St. Louis County Public Health and Human Services (SLCPHHS) filed a petition to have V.N. adjudicated as a Child in Need of Protection or Services (CHIPS). V.N. was adjudicated as CHIPS on May 14, 2024. On July 1, 2024, SLCPHHS filed a permanency petition for the termination of parental rights of appellant and D.E., V.N.'s biological father.[1]

Following a five-day court trial between December 2, 2024, and January 24, 2025, at which appellant and ten witnesses testified, the district court issued an extensive and well written order that terminated appellant's parental rights. This appeal follows.

## DECISION

Appellant challenges the district court's termination of her parental rights, arguing that the district court abused its discretion because the record does not support the district court's determinations that: (1) reasonable efforts failed to correct the conditions leading to the child's out-of-home placement, (2) the county made reasonable efforts to reunite the

---

[1] D.E. voluntarily terminated his parental rights to V.N. at the trial and takes no part in this appeal.

family, (3) the child was neglected and in foster care, and (4) termination of appellant's parental rights was in the child's best interests.

> [Appellate courts] review an order [involuntarily] terminating parental rights to determine whether the district court's findings (1) address the statutory criteria and (2) are supported by substantial evidence. [Appellate courts] must closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing. Ultimately, however, [appellate courts] review the factual findings for clear error and [whether a] statutory basis [to involuntarily terminate parental rights exists] for abuse of discretion. A finding is clearly erroneous if it is manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole. An abuse of discretion occurs if the district court improperly applied the law.

*In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 87 (Minn. App. 2012) (citations and quotations omitted). Appellate courts "apply an abuse-of-discretion standard of review to a district court's conclusion that termination of parental rights is in a child's best interests." *In re Welfare of Child of A.M.C.*, 920 N.W.2d 648, 657 (Minn. App. 2018). On appeal, "[c]onsiderable deference is due to the district court's decision because a district court is in a superior position to assess the credibility of witnesses." *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn. 1996).

**I.      Minn. Stat. § 260C.301, subd. 1(b)(4) (2024)**

The district court may terminate parental rights to a child if it finds "that following the child's placement out of the home, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the child's placement." Minn. Stat. § 260C.301, subd. 1(b)(4). It is presumed that reasonable efforts have failed upon a

3

showing that: (1) if the child is under age eight, the child has resided out of the parental home under court order for six months, (2) the district court has approved the out-of-home placement plan, (3) conditions leading to the out-of-home placement have not been corrected upon a showing that the parent has not substantially complied with the court's orders and a reasonable case plan,[2] and (4) reasonable efforts have been made by the social services agency to rehabilitate the parent and reunite the family. *Id.*

Appellant does not dispute that the first two criteria have been met, but she argues that she "made sufficient efforts to complete her case plan, which renders a termination under [the statute] erroneous." But "[a] parent's substantial compliance with a case plan may not be enough to avoid termination of parental rights when the record contains clear and convincing evidence supporting termination." *J.K.T.*, 814 N.W.2d at 89.

The record includes testimony from three social workers: M.J., T.C., and A.L. M.J. testified that she received a report of people drinking alcohol and partying in appellant's hospital room after V.N.'s birth and had concerns about appellant's ability to understand caring for a baby. M.J. arranged a plan in which appellant and V.N. would stay at appellant's brother's residence. But appellant was asked in early August to leave her brother's residence with V.N. Although she told M.J. where she would allegedly be going, she went somewhere else. M.J. testified that she found appellant and V.N., then a month old, in a situation with a police standoff and an individual with a weapon; appellant was

---

[2] Appellant does not argue that the case plan, which addressed mental health, criminal activity and domestic violence, substance abuse, and visits to correct the conditions leading to the out-of-home placement, was unreasonable.

refusing to follow police instructions to leave with V.N. Appellant and V.N. were taken to a shelter, but appellant was immediately asked to leave because she, then a minor, smoked marijuana outside the shelter. M.J. testified that V.N. was removed from appellant's care because of appellant's inability to care for V.N. and lack of concern for V.N.'s safety.

A.L. had been appellant's social worker since 2018, when appellant was 13. A.L. testified that appellant had been in 11 different placements, left placements when she did not like them, had no relatives with whom she could safely reside, was sexually abused in a foster placement when she was 14, and had been reported as a runaway. A.L. also testified that appellant had been in therapy but failed to attend and was discharged unsuccessfully and that a letter from V.N.'s doctor showed appellant acted inappropriately during a visit and the doctor would decline to provide V.N.'s care if that behavior continued. A.L. was concerned about appellant's ability to meet her own needs, her tendency to put herself into dangerous situations, her housing stability, and her mental health.

T.C. was assigned to appellant's case file in August 2023. She testified that appellant's compliance with the case plan was "fair to poor"; that appellant did not attend appointments and was discharged for lack of attendance and participation; and that appellant displayed a lack of impulse control, escalated interactions with professionals and other people, and could not foresee the consequences of her decisions.

T.C. also testified concerning appellant's use of chemicals. She said appellant used cannabis for anxiety, but was not old enough to use it legally or to obtain a cannabis prescription; that appellant did not believe her alcohol use was a problem; and that

5

appellant's compliance with the sobriety requirement of her case plan has been poor, since she appeared for only 19 out of at least 79 urinalysis appointments and tested positive for substances not legal for her at all of them. T.C. testified further about appellant's potential methamphetamine use and her presence during sales of heroin and fentanyl, despite the case plan's prohibition of the use of such substances.

T.C.'s testimony included appellant's involvement with law enforcement. T.C. testified that one condition of appellant's reunification with V.N. was remaining law-abiding because appellant had participated in incidents of violence towards a police officer, one of which, between the first and second days of the trial, involved alcohol and the use of knives; in another incident, appellant had to be detained in handcuffs, she physically fought with police, and she attempted to destroy a body-worn camera.

The district court found all three social workers' testimony to be credible. Appellant has not shown substantial compliance with her case plan, and even if she had, that fact would not preclude termination. *See A.M.C.*, 920 N.W.2d at 657.

## II. Reasonable Efforts

Appellant argues that, although the district court noted that 27 different services had been engaged in making reasonable efforts to reunify appellant and V.N., it did not address how those services were culturally appropriate or realistic. Appellant relies on *In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn. 1980) (vacating an order of termination of the parental rights of a juvenile mother and remanding for further proceedings). But *Chosa* is distinguishable. In that case, the child was four years old and had remained with the mother for 16 months before being removed from her care, while V.N. is 27 months old

and was with appellant for less than six weeks before she was removed. The supreme court also noted that the *Chosa* child's placement with a relative had failed and he had been removed to a shelter home, so his life had been disrupted, and concluded that reversing the termination would "add little more to the disruption of [the child's] life than [was] presently occurring." *Id.*

This is not the case here. V.N.'s Guardian ad Litem (GAL), C.H., testified that she does not know if V.N. understands that appellant is her mother or an important person in her life and that V.N. is not attached to appellant in the way that a child should be attached to a parent. Moreover, C.H. was concerned about appellant's emotional control issues, parental capacity, and ongoing contact with law enforcement. C.H. recommended that appellant's parental rights be terminated.

Appellant does not specify why the efforts made by SLCPHHS and the 27 services were culturally inappropriate or unrealistic. She claims it was "reversible error for the [d]istrict [c]ourt to not explain how the services were culturally appropriate or realistic," but cites no legal support for her view that a district court is required to explain how the services were culturally appropriate and realistic when it found that the services were reasonable. Moreover, appellant could have moved the district court for amended findings on this point, but did not do so.

### III.    Minn. Stat. § 260C.301, subd. 1(b)(7) (2024)

Minn. Stat § 260C.301, subd. 1(b)(7), sets out several criteria for a child to be determined neglected and in foster care, and the district court made findings on all those relevant to appellant's situation. Appellant challenges and seeks reversal only of "any

7

findings relative to Child being neglected and in foster care." Specifically, she challenges the finding that:

> It is unclear from the record whether [appellant] had made any visits with the child in the three months before the filing of the [p]etition [i.e., during April, May, and June 2024]. The evidence makes reference to numerous times that visits were suspended because they were missed, but also appears to indicate that occasional supervised visits did occur.

Appellant argues that the record shows that she visited V.N. on October 21 and November 11, 2024, but these visits were not "in the three months before the filing of the [p]etition" on July 1, 2024. Appellant admits that V.N. has been in foster care since August 14, 2023.

The district court made extensive findings as to appellant's visitations with V.N., based on the testimony of various witnesses. These included a finding based on the testimony of Dr. A.M., a forensic psychologist, that appellant had not been compliant with regard to missed parenting visits and a finding based on the testimony of A.L. that appellant wanted to be with other people during her visits with V.N., that she would be engaged for short periods of time during the visits, and that her attendance became an issue, which resulted in appellant not bonding with V.N. or getting used to taking care of her. Six findings were based on the testimony of T.C.: (1) appellant did not follow through on V.N.'s medical appointments and canceled some of the recommended appointments; (2) appellant's only overnight visit with V.N. involved appellant not remaining where she had said she would be and V.N. smelling of marijuana when she was returned; (3) appellant often failed to appear for visits, which were eventually suspended; (4) appellant did not progress to unsupervised visits because unsupervised visits would not have been safe due

8

to appellant's mental health status; (5) appellant missed more than half of the scheduled visits; and (6) visits were suspended after appellant missed four consecutive visits. Two more findings were based on the testimony of C.H.: appellant had missed 38 scheduled visits, only four of which were due to V.N.'s illness, and there was a negative impact on V.N. when she spent 40 minutes in a car to visit appellant and appellant did not show up.

The district court's determination that V.N. was neglected and in foster care is well-supported by the record and was not an abuse of discretion.

## IV. Best Interests

A district court must weigh the best interests of both the parent and the child in maintaining the parent-child relationship against any competing interest of the child in terminating parental rights. *In re Welfare of Child of K.S.F.*, 823 N.W.2d 656, 668 (Minn. App. 2012); *see* Minn. R. Juv. Prot. P. 58.04(c)(2)(ii). When the district court rules that a statutory basis to terminate parental rights exists and the interests of parent and child conflict, the interests of the child are paramount. Minn. Stat. § 260C.301, subd. 7 (2024).

The district court found that, although appellant "testified credibly that she loves [V.N.] and very much wants [V.N.] returned to her care," V.N. had been in out-of-home placement for "nearly all of her life," appellant's "lack of engagement with visits has resulted in [her] being a near stranger to [V.N.]," and it was appellant's "refusal to engage with the case plan and demonstrate the consistency required to safely parent a child that caused her visits to remain supervised and then suspended, not the failure of the service providers and [the] Agency to make reasonable efforts." The record supports these findings. Appellant objects to them on the ground that no qualified professional testified

9

about bonding and V.N.'s best interests. But V.N.'s GAL and the social workers all testified that appellant had not engaged in visiting or in building a relationship with V.N. The district court's conclusion that terminating appellant's parental rights was in V.N.'s best interests was not an abuse of discretion.

**Affirmed.**