**In the Matter of the CHILDREN OF T.A.A.**

No. A04–1345.

Supreme Court of Minnesota.

Aug. 4, 2005.

Rehearing Denied Sept. 6, 2005.

Douglas H. Johnson, Washington County Attorney, Gregory J. Tavernier, Assistant County Attorney, Stillwater, MN, for appellant Washington County.

Wright S. Walling, Sherri D. Hawley, Walling, Berg & Debele, PA, Minneapolis, MN, for respondent T.A.A.

Gregory J. Schmidt, Gregory J. Schmidt Law Offices, PA, St. Paul, MN, for children K.B. and J.B.

## OPINION

MEYER, Justice.

The district court terminated respondent T.A.A.'s parental rights to her four children based on findings that statutory grounds for termination exist, that termination is in the children's best interests, and that the county made reasonable efforts to reunite T.A.A. with her children.

The court of appeals reversed on the ground the county failed to make reasonable efforts toward reunification because the county did not offer T.A.A. chemical dependency treatment at an earlier time. We reverse.

T.A.A. is the mother of two daughters, J.B., born November 1990, and K.B., born May 1992, and of two sons, C.T., born February 1999, and H.B., born August 2001. The children were placed in protective custody on May 1, 2003, and a petition alleging the children were in need of protection or services (CHIPS petition) was filed on May 6, 2003. The CHIPS petition alleged that there had been a report of physical abuse of H.B. based on a hand-shaped bruise on H.B.'s face after being left in the care of respondent mother's current boyfriend. The CHIPS petition also alleged that C.T. suffered severe burns on his thighs and groin area as a result of playing with matches while under the supervision of T.A.A., that T.A.A. had J.B. and K.B. supervise and care for H.B. and C.T. for extended periods of time, and that the family home was unclean and unsafe. The CHIPS petition also alleged a history of neglect and abuse of the children by men with whom T.A.A. was romantically involved. The CHIPS petition stated that J.B. and K.B. were abused by respondent's live-in boyfriend, R.T., when they were ages five and four, and that J.B. was sexually abused by a subsequent live-in boyfriend in 2001. J.B. reported the abuse to T.A.A., but T.A.A. allowed R.T. to live in the home an additional six months, at which time the abuse was reported to the police. T.A.A. admitted the children were in need of protection or services at the hearing on the CHIPS petition.

The court approved a case plan for T.A.A. that identified five goals for her: (1) appropriately parent the children in a consistent manner; (2) maintain stable mental health; (3) remain abstinent from drugs and alcohol; (4) meet the children's educational needs; and (5) maintain a legal, stable, clean and safe environment and housing for the children.

The county conducted a parenting assessment that indicated T.A.A. has problems acknowledging that she could protect her children from abuse by others and that she has problems acting as a parent figure to her children. T.A.A.'s refusal to recognize her responsibility to protect her children from abuse was a concern in light of the history of abuse of the children by others. The county provided her with services to address these concerns, including in-home sessions with social workers, and the district court found that the services provided were reasonable. Despite the services provided, the district court found that respondent did not make progress in the area of parenting. One social worker, who provided services in the final months preceding the petition for termination of parental rights, testified at the hearing on the petition for termination of T.A.A.'s parental rights that T.A.A. at times would show no concern when her children were involved in dangerous situations or activities.

The county provided respondent with mental health services as recommended by a psychiatrist. T.A.A. cooperated in a mental health evaluation. An evaluating psychologist concluded that T.A.A. suffers a personality disorder that causes her to deny the problems with her parenting and to lack insight into her history of abusive relationships. T.A.A. failed to participate in a women's group or a support group as recommended, but she did agree to participate in individual therapy. Her treating psychologist, Dr. Fran Stawarz, testified that T.A.A. did not make any progress in therapy. She further testified that she continued sessions with T.A.A. even after

she had concluded that T.A.A. was not a candidate for further treatment, because the county had requested she continue. Dr. Stawarz testified at the termination hearing that T.A.A. did not believe there was anything "she could have done * * * to [keep] the children safe" from the prior abuse. Dr. Stawarz acknowledged that T.A.A. loves her children, but Dr. Stawarz did not believe that T.A.A. "would recognize a problem if it occurred in the future" and that the children were at risk of future abuse if returned to T.A.A. Dr. Stawarz opined that T.A.A. does not currently have the ability to safely parent her children, that T.A.A. would not have the ability to do so in the reasonably foreseeable future, and that the children should not be returned to T.A.A. now or in the reasonably foreseeable future. There was no evidence presented that T.A.A.'s lack of progress in therapy was related to her drug use.

As part of addressing the requirement of abstinence from drugs and alcohol, T.A.A. was required to submit to random drug testing. She was tested for drugs and alcohol 11 times between May 6 and November 2003. T.A.A. testified positive for marijuana in May and tested positive for methamphetamine in June, August, and November. During this period, T.A.A. also provided three samples that tested negative and three samples that were diluted and could not be tested. Because there is a possibility of false positive methamphetamine results, the county sent the four samples that tested positive for methamphetamine for confirmation testing, which confirmed the positive test results.

The county referred T.A.A. for four chemical health assessments after the positive results from the May, June, August, and November tests. The assessments were performed by Gary Paulson. T.A.A. denied using drugs and claimed that the positive test results were false positives and on one occasion attributed a positive test for methamphetamine to the use of diet drugs. After the first three assessments, Paulson concluded that T.A.A. did not have a chemical dependency problem and did not refer T.A.A. for treatment because T.A.A. denied having a drug problem. At the times of these three assessments, Paulson was not aware that the positive methamphetamine tests had been confirmed.

The fourth chemical dependency assessment occurred in November 2003 after a court hearing at which the county asked the court for permission to terminate reasonable efforts based on T.A.A.'s lack of progress in addressing her parenting problems and continued use of controlled substances. Pursuant to the county's request, the court entered an order ceasing all reasonable efforts with the exception that T.A.A. complete a chemical dependency treatment program if recommended after another chemical dependency evaluation. Paulson was informed at the time of the fourth chemical dependency evaluation that T.A.A.'s most recent positive test for methamphetamine had been confirmed. T.A.A. continued to deny using drugs. Despite T.A.A.'s continued denial of drug use, Paulson referred T.A.A. to the Tapestry Women's Program for a chemical dependency evaluation and treatment at the request of the county.

T.A.A. entered Tapestry on December 17, 2003. Although T.A.A. participated in treatment and worked on assignments, she did not make any progress in treatment because she continued to deny that she used drugs or had a chemical dependency problem. On December 31, 2003, T.A.A. attended a review hearing in the CHIPS matter. She called Tapestry later that day to report that she would not be returning to the program. T.A.A. was told

to call if she wanted to return. Because it was not known if she would be returning, the county canceled a visitation session with the children at Tapestry scheduled for January 2, 2004. T.A.A. returned to Tapestry on January 1. She permanently left the program on January 2 after learning that the visitation had been canceled. Because of the impending permanency deadline[1] and because the district court had already issued an order permitting the county to cease providing services, no further treatment was offered to T.A.A. T.A.A. never requested additional opportunities for treatment and has never asserted that she is chemically dependent. At the termination hearing in May 2004, she continued to deny the use of drugs.

To fulfill the fourth case plan goal of meeting the children's educational needs, the county provided T.A.A. with the services of in-home parent educators, and required T.A.A. to participate in meetings relating to the educational needs of the children and to follow through with any recommendations for addressing special education. T.A.A.'s case manager, Jackie Johnson, testified that while T.A.A. attended meetings, she refused to recognize the need for recommended speech therapy for C.T., who was diagnosed with speech delays. Johnson also testified that the in-home parent educators reported that

T.A.A. was inconsistent in the attention and direction she provided to the children.

The fifth goal of the case plan required T.A.A. to maintain a safe and suitable home for the children. The record indicates that the issues regarding the condition of the family home had been substantially addressed at the time of the termination hearing, and the district court did not find that the condition of the home was unsuitable for the children.

After T.A.A. left the Tapestry program, the county filed a petition to terminate her parental rights. Following a trial, the district court found that the county had made reasonable efforts toward reunification and that termination was warranted because: (1) T.A.A. failed to comply with the duties imposed by the parent-child relationship; (2) T.A.A. is palpably unfit to be a party to the parent-child relationship; (3) reasonable efforts failed to correct the conditions leading to the out-of-home placement; and (4) the children had experienced egregious harm in the care of T.A.A. The district court further found that termination was in the best interests of the children.[2]

T.A.A. appealed and a divided panel of the court of appeals reversed. *In re Children of T.A.A.*, No. A04–1345, 2005 WL 288776 (Minn.App. Feb.2, 2005). The court of appeals concluded that the county's failure to provide T.A.A. with chemical

---

**1.** Because two of the children were under eight years of age, the district court was required to conduct a permanency hearing within six months of the date the children were placed out of the home. Minn.Stat. § 260C.201, subd. 11a (2004). The county obtained a three-month extension of the permanency deadline to February 1, 2004.

**2.** The district court adopted the county's proposed findings verbatim. While we have declined to adopt a blanket prohibition on the practice, we take this opportunity to repeat that "[o]ur preference is 'for a court to independently develop its own findings.'" *Peder-*

*son v. State*, 649 N.W.2d 161, 163 (Minn. 2002) (citation omitted). We recognize the short deadline facing district courts in issuing an order on a petition to terminate parental rights. *See* Minn. R. Juv. Prot. P. 39.05, subd. 1 (requiring district court to issue order within 15 days of conclusion of trial in juvenile protection matter). However, the district court's findings should reflect the court's independent assessment of the evidence and this is best accomplished by the district court exercising its own skill and judgment in drafting its findings.

dependency treatment at the time it first learned that T.A.A. had tested positive for illegal chemicals constituted a failure to provide reasonable efforts, precluding termination of her parental rights. In reaching this conclusion, the court of appeals concluded that T.A.A.'s drug use was the "crux" of the district court's decision to terminate parental rights. Because it concluded that the county failed to provide reasonable efforts, the court of appeals did not reach the issues of whether statutory grounds for termination existed or whether termination was in the best interests of the children.

## I.

An order terminating parental rights is reviewed "to determine whether the district court's findings address the statutory criteria and whether those findings are supported by substantial evidence and are not clearly erroneous." *In re Welfare of P.R.L.*, 622 N.W.2d 538, 543 (Minn.2001). This court gives deference to a trial court's decision to terminate parental rights but closely inquires into the sufficiency of the evidence to determine whether it was clear and convincing. *In re Welfare of J.M.*, 574 N.W.2d 717, 724 (Minn.1998).

In reviewing a decision to terminate parental rights, the appellate court determines whether there is clear and convincing evidence to support at least one statutory ground for termination and, if so, whether termination is in the best interests of the child. *In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004). If statutory grounds for termination exist and termination is in the best interests of the child, the appellate court then determines whether there is clear and convincing evidence that the county made

reasonable efforts to reunite the family. *See In re Welfare of S.Z.*, 547 N.W.2d 886, 892 (Minn.1996) (noting mandatory nature of reasonable efforts by social services agency to reunite family).

## II.

The district court found four statutory grounds for involuntary termination of T.A.A.'s parental rights. Only one ground must be proven for termination to be ordered. *In re Children of R.W.*, 678 N.W.2d at 55. We conclude that the district court's findings support termination of T.A.A.'s parental rights based on palpable unfitness under Minn.Stat. § 260C.301, subd. 1(b)(4) (2004).[3]

Parental rights may be terminated under Minn.Stat. § 260C.301, subd. 1(b)(4), based on clear and convincing evidence

> that a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

The record and the district court's findings support the conclusion that T.A.A. was unable to provide appropriate care for her children because she refused to acknowledge her responsibility to protect her children from abuse by others. T.A.A.'s own treating psychologist testified that T.A.A. had not made any progress in addressing this issue and she opined that the children would be at risk for future abuse if reunited with T.A.A. now or in the reasonably

---

3. Because we conclude termination was appropriate based on palpable unfitness, we do not address the remaining grounds for termination cited by the district court.

foreseeable future. T.A.A.'s history, which includes abuse of her daughters by two different boyfriends and permitting one of the boyfriends to continue to live in her home with her children for six months after learning of the abuse, demonstrates that she has failed to protect her children from abuse by others in the past. T.A.A. refused to acknowledge her responsibility to protect her children from abuse by others despite the therapy and other services offered by the county to help her address this issue. The record demonstrates that T.A.A. does not now, nor will in the reasonably foreseeable future, recognize her responsibility to protect her children from abuse and this provides clear and convincing evidence to support the district court's determination that her parental rights should be terminated based on palpable unfitness.

### III.

■ Having concluded that statutory grounds for termination exist, we must determine whether termination is in the best interests of the children. *In re Children of R.W.*, 678 N.W.2d at 57. The district court made extensive findings regarding the children's best interests and concluded that the children's best interests are served by termination of T.A.A.'s parental rights. Specifically, the district court found that J.B. and K.B. believed they were responsible for the past abuse, that T.A.A. has not taken any steps to help them understand that it was not their fault, nor has she taken responsibility to keep her daughters safe from future abuse, and that T.A.A. "will repeat this behavior of placing her children in harm's way." The district court also found that the children have adjusted to permanent placement with their relatives and that the relatives are meeting the needs of the children. The district court's conclusion that termination is in the best interests of the children is supported by clear and convincing evidence.

### IV.

■ Because we affirm the district court's conclusions that statutory grounds for termination exist and that termination is in the best interests of the children, we now turn to the issue of whether the county made reasonable efforts to reunite T.A.A. and her children. Under Minn. Stat. § 260.012(c) (2004), the district court is required to "make findings and conclusions as to the provision of reasonable efforts" or must find that the provision of services or additional services would be futile. In determining whether reasonable efforts have been made, the court considers whether the services offered to the child and family were: (1) relevant to the safety and protection of the child; (2) adequate to meet the needs of the child and family; (3) culturally appropriate; (4) available and accessible; (5) consistent and timely; and (6) realistic under the circumstances. *Id.* Another statutory provision, Minn.Stat. § 260C.301, subd. 8(1) (2004), requires, in a proceeding to terminate parental rights, that the district court make specific findings "that reasonable efforts to prevent the placement and to reunify the child and the parent were made including individualized and explicit findings regarding the nature and extent of efforts made by the social services agency to rehabilitate the parent and reunite the family[.]" Alternatively, the district court may find "that reasonable efforts at reunification are not required as provided under [Minn. Stat. § ] 260.012." Minn.Stat. § 260C.301, subd. 8(2).

The court of appeals concluded that the county had not made reasonable efforts because it failed to provide T.A.A. with chemical dependency treatment earlier in the proceeding. The court of appeals' de-

cision was based on its conclusion that the "crux of the trial court's decision to terminate [T.A.A.'s] parental rights is its determination that [T.A.A.] had not complied with her case plan because she had not satisfied the portions of that plan requiring [her] not to abuse chemicals[.]" *In re Children of T.A.A.*, 2005 WL 288776, at *4.

We do not agree that "the crux of the [district] court's decision to terminate parental rights" was based on T.A.A.'s drug use. The district court's order and the record in this case indicate that the primary concern of the district court and the county was T.A.A.'s refusal to acknowledge her duty to protect the children from abuse. The district court made extensive, detailed findings regarding the testimony of T.A.A.'s social worker, her treating psychologist, and other service providers regarding their conclusion that T.A.A. had failed to make adequate progress towards recognizing her obligation to protect her children from abuse. While T.A.A.'s drug use may have been the proverbial "last straw" in the county's decision to seek termination of her parental rights, it is apparent from the record that T.A.A.'s drug use was not the "crux" of the district court's decision.

The county reasonably provided services specifically aimed at correcting the problems cited as grounds for termination; namely, T.A.A.'s refusal to accept responsibility for keeping her children safe. The county provided T.A.A. with individual therapy to help her address her personality disorder that prevented her from recognizing her responsibility to protect her children from abuse. The county also provided T.A.A. with social workers who provided in-home services to assist T.A.A. in developing her parenting skills. T.A.A. has consistently refused to acknowledge that one of her responsibilities as a parent is to recognize people and situations that could pose a danger to her children and there is no evidence in the record that additional efforts could have adequately addressed this issue in the reasonably foreseeable future.

The court of appeals concluded that the county should have provided chemical dependency treatment earlier because T.A.A.'s "chemical abuse permeates, and is inextricably intertwined with, her parenting deficiencies and her failure to correct those deficiencies." *In re Children of T.A.A.*, 2005 WL 288776, at *5. In support of this assertion, the court of appeals cites portions of the district court's order that indicate T.A.A.'s case worker believed drug use was an "ongoing issue for reunification" and that other service providers were concerned about T.A.A.'s drug use and her denial of such use. *Id.* While T.A.A.'s drug use was an issue in the case, there is nothing in the record or the district court's findings to support a conclusion that T.A.A.'s drug use caused or contributed to her parenting deficiencies. At best, the record supports the conclusion that T.A.A.'s problems in acknowledging her responsibility to protect her children and admitting her drug use both stem from her personality disorder, for which the county offered treatment.

Because there was no causal relationship established between T.A.A.'s drug use and her inability to parent her children, the county's failure to provide drug treatment does not support a conclusion that the county failed to make reasonable efforts where termination was not based on T.A.A.'s drug use. Therefore, we hold that the district court's finding that the county made reasonable efforts to reunite is supported by clear and convincing evi-

dence in the record[4] and reverse the courts of appeals.

Reversed.

4. The county filed a motion to strike T.A.A.'s appendix and T.A.A. filed a responsive motion to strike portions of the county's brief. The materials that are the subject of the motions were not considered in reaching our decision in this case and therefore we decline to rule on the motions.