*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0234**

In the Matter of the
Welfare of the Child of:
S.V., Parent

**Filed July 13, 2015
Affirmed; motion denied
Ross, Judge**

McLeod County District Court
File No. 43-JV-14-103

Scott L. Nokes, Glencoe Law Office, Glencoe, Minnesota (for appellant S.V.)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael K. Junge, McLeod County Attorney, Elizabeth Smith, Assistant County Attorney, Glencoe, Minnesota (for McLeod County Social Services)

Dawn Mitchell, Hutchinson, Minnesota (Guardian ad Litem)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Willis, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

After S.V.'s parental rights to her first two children were involuntarily terminated, she continued to smoke methamphetamine while her two-year-old daughter was in her

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

care, left that daughter with a friend and disappeared without any contact on a two-month methamphetamine binge, and returned unannounced, still high on meth, and abruptly took the child back. McLeod County filed a petition to terminate S.V.'s parental rights to the child, and the district court granted the county's petition after a trial, finding, among other things, that S.V. had not rebutted the statutory presumption of palpable unfitness to parent based on S.V.'s previous termination of rights. Because the district court did not abuse its discretion by concluding that S.V. failed to rebut the presumption, we affirm.

**FACTS**

S.V. has had three children. The district court involuntarily terminated her parental rights to her first two children in 1999. S.V.'s daughter K.V. was born in October 2011. S.V. consumed methamphetamine while she was pregnant with K.V. S.V. does not know who K.V.'s father is.

S.V. began drinking in 1996 when she was 15 years old and began using methamphetamine in 2007. She used the drug while she was pregnant with K.V., who was born with hypoplastic heart syndrome, a condition that has required the child to take medication and to undergo two heart surgeries and that will require one more surgery.

S.V.'s neighbor called police in April 2014 because S.V. was in an apparent drug stupor, standing naked in the apartment building's hallway. S.V. wandered from the building and into her car, where police found her "dazed" and claiming to be leaving her boyfriend, Kanlanha Vonghalath. She had been using drugs and alcohol. She told police that she thought two-year-old K.V. was in the apartment with Vonghalath. Police went inside and spoke to Vonghalath, who told the officers that he came home in the early

morning hours and found S.V. drinking alcohol and high on methamphetamine while supposedly caring for K.V. He told her to leave the apartment, which she apparently did, naked.

Police arrested S.V. for drug possession, child endangerment, and third-degree driving while impaired. A few days later, S.V. reported to police that Vonghalath threatened her with a knife. Police arrested Vonghalath, and the district court convicted him of making terroristic threats.

In the same month as S.V.'s child-endangerment charge and her knife encounter with Vonghalath, S.V. took K.V. to M.W.'s home. M.W. is Vonghalath's 27-year-old daughter. S.V. left K.V. with M.W. and disappeared until June 6, never contacting M.W. or K.V. during that period. Also during the disappearance period, McLeod County Human Services filed a petition alleging that K.V. needed protection or services. K.V. was formally placed with M.W. in foster care.

S.V. resurfaced on June 6, 2014. She showed up unannounced at M.W.'s home, apparently high on methamphetamine, and she abruptly took K.V. Police found S.V. and tested her for methamphetamine, returning the child to M.W. The tests confirmed S.V.'s methamphetamine consumption. S.V. began a 45-day stint in jail. Three days after she took K.V. from M.W.'s home, McLeod County filed a petition to involuntarily terminate S.V.'s parental rights to K.V. S.V. opposed the petition and the district court conducted a trial in November 2014.

S.V. testified at trial that she was living with Vonghalath, pregnant with his child and engaged to marry him. She was not employed. She had worked only one month in the

3

previous four years. She explained K.V.'s heart condition and its consequences. She also testified that she believed K.V. was doing well with M.W. because M.W. had "always been taking care of [K.V.], since she was newborn."

S.V. said that she had not used methamphetamine since June 2014. She admitted that she used methamphetamine in her home while K.V. was in the apartment. She claimed they were in different rooms. She said she left K.V. with M.W. several days later so that she could use methamphetamine. At the time of trial, S.V. was attending a drug-treatment program three days a week. She had begun this program only in late August 2014, and she said she could not attend during the month of October because the treatment center was closed. S.V. had also missed two treatment sessions the week before trial. She testified that she attended Narcotics Anonymous classes once a week but had not yet secured a sponsor. S.V. had supervised visits with K.V. twice monthly, but she forgot to attend one of the visits in October.

M.W. testified. She is an employed credit analyst and is studying finance at a Twin Cities university. She has known K.V. her entire life. M.W. testified that S.V. left K.V. at her residence on April 16 without saying how long she would be gone. In the six months that K.V. had lived with M.W., M.W. had taken K.V. to all of her medical appointments to treat her heart condition.

Parenting evaluator Heidi Tague testified at trial. Tague said she had difficulty getting "a real clear picture . . . of what was going on" from S.V. She said that S.V. admitted to "minimal [drug] use in the last 12 months." Tague had recommended that S.V. abstain from mood altering chemicals, that she attend two or three Narcotics

4

Anonymous or Alcoholics Anonymous meetings weekly, that she obtain a female sponsor who has been sober at least three years, and that she participate in outpatient chemical-dependency treatment. Tague testified that S.V. had participated in only 22 hours out of the 90 necessary to complete the program.

Jenni Johnson, a McLeod County Social Services social worker, had tracked K.V.'s case since its filing. Johnson testified that she thought it was in K.V.'s best interests to remain with M.W. She said that S.V. was having trouble finding a job because of her felony conviction, that she did not have her own means of transportation, and that she relied on her boyfriend for housing and food.

K.V.'s guardian ad litem, Dawn Mitchell, also testified that she believed it was in K.V.'s best interests to stay with M.W. She thought that M.W. was more than capable of caring for K.V., especially because M.W. has known K.V. since birth and K.V. was functioning "extremely well" in M.W.'s care. Mitchell testified that S.V.'s actions in the seven months before trial showed "that there's a severe lack of parenting insight into [K.V.] as a child, . . . especially a child with special needs, with a heart condition."

The district court terminated S.V.'s parental rights to K.V. on three grounds. First, it determined that S.V. had not rebutted the presumption that she was palpably unfit to parent. Second, it found that S.V. had abandoned K.V. And finally, it concluded that S.V. had repeatedly refused or neglected to meet her duties in the parent–child relationship. The district court also concluded that termination is in K.V.'s best interests and that her interests would be best served by staying with M.W.

S.V. moved the district court for an amended order addressing the county's efforts to reunify. The district court amended its findings. It found that the county's reunification plan was timely and realistic but that S.V.'s "parenting deficiencies that prompted Hennepin County to remove her children in 2008 and the recent events that prompted McLeod County to commence this TPR action have not resolved."

S.V. appeals.

### D E C I S I O N

S.V. asks us to reverse the order terminating her parental rights. The district court terminated S.V.'s parental rights because it found that she is palpably unfit to be a party to the parent–child relationship. *See* Minn. Stat. § 260C.301, subd. 1(b)(4) (2014). The court relied on the statutory presumption that a parent whose rights to a different child had been involuntarily terminated is palpably unfit to parent. *See id.* The district court determined that S.V. did not rebut the presumption. We review a district court's order for termination of parental rights to determine "whether the district court's findings address the statutory criteria and whether those findings are supported by substantial evidence and are not clearly erroneous." *In re Welfare of P.R.L.*, 622 N.W.2d 538, 543 (Minn. 2001). But we review de novo whether a parent's evidence satisfies her burden of rebutting the presumption. *In re Welfare of Child of J.W.*, 807 N.W.2d 441, 446 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012).

S.V. does not argue against the district court's finding that she did not rebut the presumption of unfitness. She instead argues that the county did not make a reasonable effort to reunify her and K.V. as required by statute. *See* Minn. Stat. § 260.012(a), (h)

6

(2014). The county maintains that it was not required to attempt reunification because of S.V.'s previous involuntary termination. *See* Minn. Stat. § 260.012(a)(1). But we need not address the county's argument because the district court found that the county made reasonable efforts to reunify and that finding has substantial support in the record. The county's out-of-home placement plan allowed S.V. to have supervised visits with K.V. It required her to abstain from mood altering chemicals, attend two or three chemical-dependency meetings weekly, obtain a sobriety sponsor, participate in outpatient chemical-dependency treatment, remain law-abiding, and comply with the court's child-protection proceedings. The county funded S.V.'s treatments and provided her with drivers to her supervised visits. The district court's finding that the plan was adequate and intended to provide "genuine help to address S.V.'s parenting deficiencies" is sufficiently supported by the evidence.

S.V. tacitly waives any challenge to the district court's finding that she did not rebut the presumption of unfitness to parent. We observe that the record indicates that the finding is well supported by the lack of any evidence showing that, at the time of the termination trial, S.V. had become fit to parent. Counsel at oral argument here made repeated references to her alleged improvement after the trial, but in reviewing the propriety of the district court's termination decision, we do not consider matters beyond the district court record.

The district court also properly found that termination is in K.V.'s best interests. The best interests of the child are the court's paramount consideration when addressing parental rights. Minn. Stat. § 260C.301, subd. 7 (2014). The finding is well supported.

7

When she was left in S.V.'s care, even before birth and well into her short life, the child was exposed to a pervasive drug environment. Her mother has chosen methamphetamine over the health of the child, over her relationship with the child, and over her meeting the child's basic and special needs. She reportedly became engaged to Vonghalath despite his previously threatening her with a knife. She has been continually unemployed, and she remained so at the time of trial. She had no means to provide for her own residence, relying on Vonghalath to house her. By contrast, M.W. has known and positively engaged with K.V. all of K.V.'s life, and by all accounts, including S.V.'s testimony, K.V. did well in M.W.'s care. No error appears in the district court's best-interests findings. Because we see no error in the district court's decision to terminate S.V.'s parental rights, we deny the county's motion to supplement the appellate record because it is not necessary to our determination.

In addition to relying on S.V.'s failure to rebut the presumption of unfitness to terminate parental rights, *see* Minn. Stat. § 260C.301, subd. 1(b)(4), the district court also based its termination decision on other statutory grounds. We do not consider S.V.'s challenge to these other grounds because it is enough that we can affirm on the basis of palpable unfitness. *See In re Children of T.A.A.*, 702 N.W.2d 703, 708 n.3 (Minn. 2005).

**Affirmed; motion denied.**

8