*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1723**

In the Matter of the Welfare of the Children of:
J. L. C. and M. C., Parents.

**Filed April 11, 2016
Affirmed
Smith, John, Judge**[*]

Olmsted County District Court
File No. 55-JV-15-2793

Joanna Woolman, Ruta Johnsen (certified student attorney), Mitchell Hamline School of Law, St. Paul, Minnesota (for appellant J.L.C.)

Mark A. Ostrem, Olmsted County Attorney, Debra A. Groehler, Assistant County Attorney, Rochester, Minnesota (for respondent Olmsted County Community Services)

Janet H. Krueger, Rochester, Minnesota (for respondent J.C.)

Jesse P. Buggs, Lanesboro, Minnesota (guardian ad litem)

        Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Smith, John, Judge.

_____

[*]  Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH, JOHN**, Judge

We affirm the termination of appellant-mother's parental rights because the district court did not err in finding that appellant-mother failed to rebut the presumption that she was palpably unfit to parent and that termination of appellant-mother's parental rights served the best interests of the children.

## FACTS

Appellant-mother J.L.C. appeals the termination of her parental rights to her two biological children, J.C. and K.C. Respondent-father M.C., the children's presumed father, did not participate in any of the proceedings.

In June 2014, respondent Olmsted County Community Services (OCCS) initiated a family assessment after receiving a report from the women's shelter where J.L.C. was staying with her children that questioned her capacity to parent. That same month, Kari Justin, a county social worker met with J.L.C. During their conversation, J.L.C. informed Justin of an ongoing sexual-abuse investigation involving her children in Oregon, where they previously resided before moving to Minnesota earlier that year. J.L.C. also stated that she had previously lost her parental rights to two children in California. Justin contacted child-protection services in California and received copies of jurisdictional/dispositional hearing reports confirming that J.L.C.'s parental rights to two children had been involuntarily terminated in 2000. In July, a child-protection worker met with J.L.C. to discuss a safety plan for the children, and informed her that OCCS would not be closing its case after completing the family assessment. Shortly after this meeting,

2

OCCS was unable to locate J.L.C. or the children, and their whereabouts remained unknown.

On August 6, Olmsted County filed a child-in-need-of-protection-or-services (CHIPS) petition on behalf of J.C. and K.C. The district court signed an order for emergency protective care and appointed a guardian ad litem (GAL) to represent the best interests of the children. On August 12, law enforcement located the children in Texas. OCCS officials picked the children up in Texas and returned them to Minnesota, where they were immediately placed in foster care.

On October 6, the district court found that the children were in need of protection or services, and that it was in the best interests of the children to remain in the legal and physical custody of OCCS. It made this finding after J.L.C. admitted, under Minn. Stat. § 260C.007, subd. 6(2)(i)-(iii) (2014), that the children were victims of sexual abuse, that they resided with a victim of sexual abuse, and that one of the children resided with a perpetrator of sexual abuse. J.L.C. also admitted that the children were in need of protection or services because of her inability to provide proper parental care. *See* Minn. Stat. § 260C.007, subd. 6(8) (2014).

J.L.C. signed an out-of-home-placement plan, which was approved by the district court. In April 2015, OCCS filed a petition to terminate J.L.C.'s parental rights. OCCS alleged, based on reports filed by the GAL and county-referred service providers, that J.L.C. failed to comply with several portions of her case plan.

A three-day termination-of-parental-rights trial was held, and the district court heard testimony from several witnesses. Justin testified that, during her investigation of J.L.C.

3

and the children, she obtained court records verifying that J.L.C.'s parental rights to two children had been terminated in 2000 due to drug use.

Esther Friedman, a forensic interviewer for a child-assessment center located in Albany, Oregon, testified that, in 2012, she interviewed J.C. and K.C. after they were referred to the center due to concerns that they were displaying sexualized behavior. Through her interviews with the children, Friedman determined that there was credible evidence that both children had been sexually abused. Friedman met with J.L.C., told her that the children had been sexually abused, and recommended services for the children. Copies of Friedman's interviews with the children were admitted into evidence. Friedman's report stated that J.C. had disclosed to J.L.C. nine months prior to the interview that he had been sexually abused.

The district court accepted the GAL's reports into evidence. In her final report dated August 10, 2015, the GAL recommended that J.L.C.'s parental rights be terminated, despite the fact that she "is likely doing the best that she ever has." The GAL noted J.L.C.'s inability to place the children's needs before her own, including failing to attend the children's medical appointments, failing to visit the emergency room when K.C. was injured, and bringing up upsetting subjects of conversation with the children despite being instructed by their therapist not to do so. J.C. reported that he had found visits with J.L.C. to be "chaotic," and that she had failed to keep him safe in the past. K.C. demonstrated impulsive behavior, required constant supervision, and challenged rules and authority. The children's academic performance and emotional development lagged significantly behind

4

their peers. The GAL opined that it was "more likely than not that [J.L.C.] will be unable to maintain safe and structured parenting without formal supervision."

Shannon Brown, the children's therapist, testified that both children were diagnosed with posttraumatic-stress disorder (PTSD) and that K.C. was also diagnosed with attention deficit hyperactivity disorder (ADHD) and an attachment disorder. Brown testified that J.L.C. never contacted her to inquire about the children's progress in therapy, and that she made repeated overtures to J.L.C. about arranging family-therapy sessions, but J.L.C. never followed up.

Jennifer Bye, a child-protection worker, testified extensively about her efforts in assisting J.L.C. to comply with the requirements of her case plan. Bye testified that she never allowed J.L.C. unsupervised visits with her children because she never demonstrated progress in her supervised visits. Bye also described J.L.C.'s propensity to affiliate with strangers who were not safe for her children to be around.

Kathleen Perry, a parenting educator with over 22 years of experience, testified about her experience working with J.L.C. Perry testified that she stopped working with J.L.C. earlier than planned because Perry became upset after J.L.C. repeatedly failed to apply the parenting techniques during supervised visits, which resulted in the children being further traumatized.

In her own testimony, J.L.C. described fleeing an abusive relationship with M.C. in Oregon and moving with the children to Minnesota in 2014. She did not deny that her parental rights to two children had been previously terminated in California. J.L.C.

5

testified that, since working the case plan, she had greatly benefited from therapy, and that she was employed and had secured housing.

J.L.C. testified that she first learned that the children had been sexually abused when she received documents, including copies of Friedman's interviews with the children, after she returned to Minnesota in August 2014. J.L.C. also gave conflicting versions about how she had hired the babysitter who had abused J.C. Bye testified that J.L.C. had told her that the Oregon county services had referred her to the babysitter, who was licensed. This meant that the babysitter presumably could be tracked down and prosecuted. At trial, J.L.C. testified that a friend had recommended the babysitter, but that law enforcement had been unsuccessful in locating her friend or the babysitter. J.L.C. also testified that she had left numerous phone messages with Brown regarding arranging family therapy, but Brown never returned her calls.

Laura Dusso, J.L.C.'s therapist, testified that J.L.C. had been diagnosed with PTSD, ADHD, and anxiety. Dusso testified that once J.L.C.'s medical symptoms were managed, she had made significant progress in therapy, and was much better equipped to handle daily stressors.

In October 2015, the district court issued an order and memorandum terminating both J.L.C.'s and M.C.'s parental rights. It found that there was clear and convincing evidence supporting the termination of J.L.C.'s parental rights because she was presumed to be palpably unfit because her parental rights to two other children had been terminated, and that reasonable efforts had failed to correct the conditions leading to the children's out-

of-home placement. It also determined that termination of J.L.C.'s parental rights was in the best interests of the children.

J.L.C. appeals.

## D E C I S I O N

**I.** **The district court did not err in finding J.L.C. palpably unfit to parent, and that she failed to rebut the presumption of palpable unfitness.**

When reviewing a termination of parental rights, an appellate court must determine whether the district court's findings address the statutory criteria and whether those findings are supported by substantial evidence and are not clearly erroneous. *In re Welfare of P.R.L.*, 622 N.W.2d 538, 543 (Minn. 2001). We give deference to a district court's decision to terminate parental rights, but closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing. *In re Welfare of J.M.*, 574 N.W.2d 717, 724 (Minn. 1998).

A statutory basis to terminate parental rights exists if the court finds that the parent "is palpably unfit to be a party to the parent and child relationship." Minn. Stat. § 260C.301, subd. 1(b)(4) (2014). "It is presumed that a parent is palpably unfit to be a party to the parent and child relationship upon a showing that the parent's parental rights to one or more other children were involuntarily terminated." *Id.* "When this is established, it is the parent's burden to prove fitness to be a parent and the absence of other reasons to terminate parental rights is not sufficient to overcome the presumption of unfitness." *In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 709 (Minn. App. 2004). To satisfy the burden of production and rebut the presumption created by Minn. Stat.

7

§ 260C.301, subd. 1(b)(4), "a parent must introduce evidence that would justify a finding of fact that he or she is not palpably unfit." *In re Welfare of Child of J.W.*, 807 N.W.2d 441, 445 (Minn. App. 2011) (quotation omitted) (citing Minn. R. Evid. 301 1977 comm. cmt.), *review denied* (Minn. Jan. 6, 2012). "We apply a *de novo* standard of review to a district court's determination as to whether a parent's evidence is capable of justifying a finding in his or her favor at trial." *Id.* at 446.

J.L.C. challenges the district court's finding that she was unfit to parent because her parental rights to two children had previously been terminated. She asserts she was a victim of identity theft in California, and the woman who stole her identity had her parental rights to her children terminated under J.L.C.'s name. At trial, the district court admitted into evidence a copy of J.L.C.'s certificate of identity theft issued from the Riverside County District Court of California.

As J.L.C. never raised this argument before the district court, we typically would decline to consider this claim. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). But because this case concerns the grave issue of terminating J.L.C.'s rights to her children, we will examine the merit of her argument in the interests of justice. *See* Minn. R. Civ. App. P. 103.04 (allowing for appellate review of "any other matter as the interest of justice may require").

Here, the district court properly considered J.L.C.'s medical records when finding that she was palpably unfit to parent. Justin testified to her receipt of court records from California documenting that J.L.C.'s parental rights to two children were involuntarily terminated in 2000. The record is also replete with instances where OCCS referenced

8

J.L.C.'s previous parental-rights termination in California, including the CHIPS petition, OCCS reports, and the termination-of-parental-rights petition, to which J.L.C. never objected. J.L.C. also never challenged Justin's trial testimony that J.L.C.'s parental rights to two children had been previously terminated in California due to her drug use. J.L.C.'s certificate of identity theft is irrelevant because even if the woman who stole J.L.C.'s identity had her parental rights terminated, that fact does not refute the fact that J.L.C. also had her parental rights terminated. Hence, the district court correctly presumed that J.L.C. was palpably unfit to engage in the parent-child relationship because her parental rights were previously terminated. *See* Minn. Stat. § 260C.301, subd. 1(b)(4).

At oral argument, J.L.C. argued that the district court erred by concluding that she did not rebut the presumption that she was palpably unfit to parent. She argues that she rebutted the presumption by substantially complying with her case plan and that she had made significant progress in therapy, as corroborated by Dusso. But J.L.C. must do more than engage in services; she must demonstrate improvement in her parenting abilities. *See In re Welfare of Child of D.L.D.*, 771 N.W.2d 538, 545 (Minn. App. 2009). The record demonstrates that J.L.C. has made progress. But the district court properly noted that J.L.C. was a "poor historian" about past events and offered a version of events "that does not implicate or reflect badly on her in any way." The record shows that J.L.C. offered no credible or reasonable explanation as to how she did not know the children were victims of sexual abuse, how she came to know the babysitter who abused J.C., or why she failed to obtain counseling for the children. And, as the district court noted, J.L.C. has a propensity for picking up and leaving when child protection is involved in her life and the

9

lives of her children. Given these serious past lapses in protecting her children, it is significant that she never contacted the children's therapist about their progress in therapy, and she failed to attend to the children's medical needs. J.L.C.'s parenting educator and the child-protection worker did not see any progress in J.L.C.'s parenting abilities during her supervised visits with the children.

J.L.C. also discounts many of her behaviors cited by OCCS as evidence that she was unfit, asserting that they occurred prior to the implementation of her case plan. The record evidence J.L.C. produced at trial was insufficient to rebut the presumption she was palpably unfit to parent. The district court found that the children will require intensive, ongoing mental health, educational, and medical services. The record before us supports the district court's determination that, despite the efforts of numerous county-referred service providers, J.L.C. will be unable to adequately parent the children without formal supervision for the foreseeable future. We conclude that the district court did not abuse its discretion by invoking the palpably-unfit-parent basis to terminate J.L.C.'s parental rights.

Because substantial evidence supports the termination of J.L.C.'s parental rights for palpable unfitness, we need not address the other statutory basis upon which the district court terminated her parental rights. *See In re Children of T.A.A.*, 702 N.W.2d 703, 708 (Minn. 2005) (affirming termination of parental rights on one statutory ground).

**II.     The district court did not abuse its discretion in finding that termination was in the best interests of the children.**

Appellate courts review the district court's decision to terminate parental rights for an abuse of discretion. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012). In analyzing the child's best interests, "the court must balance three factors: (1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child." *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992). "Competing interests include such things as a stable environment, health considerations and the child's preferences." *Id.* We review a district court's determination that termination is in the best interests of the child for an abuse of discretion. *J.R.B.*, 805 N.W.2d at 905.

J.L.C. argues that the district court erred in finding that it was in the best interests of the children to terminate her parental rights. She asserts that the district court found that she loves her children and wants to care for them, and that K.C. desires to spend time with her. With respect to the competing-interests factor, J.L.C. points out her success in securing housing and employment, as well as her progress in therapy.

The record amply supports the district court's determination that termination of J.L.C.'s parental rights was in the children's best interests. The district court acknowledged that while J.L.C. loves her children and K.C. looks forward to visiting her, J.C. did not want to return to her care. Moreover, competing concerns regarding J.L.C.'s capacity to care for the children outweigh J.L.C.'s preference. As the district court noted, both children

11

had experienced significant trauma in their lives, and "[t]he needs of the children for a safe, stable and loving home far outweigh their [m]other's desire to maintain a relationship with them." On this record, we conclude that the district court did not abuse its discretion by terminating J.L.C.'s parental rights to J.C. and K.C.

**Affirmed.**