*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1256**

In the Matter of the Welfare of the Child of: L. M. P., Parent.

**Filed January 17, 2017
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-JV-16-357

Mary F. Moriarty, Hennepin County Public Defender, Paul J. Maravigli, Assistant Public Defender, Minneapolis, Minnesota (for appellant L.M.P.)

Michael O. Freeman, Hennepin County Attorney, Kacy Wothe, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services and Public Health Department)

Adam J. Vetvick, Vetvick Law, St. Paul, Minnesota (for guardian ad litem Thomas Scallen)

Considered and decided by Jesson, Presiding Judge; Ross, Judge; and Schellhas, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges the termination of her parental rights, arguing that the social-services agency failed to perform an adequate relative search and that the district court therefore abused its discretion by determining that termination is in the child's best interests. We affirm.

**FACTS**

In January 2016, L.M.P. gave birth to a girl, E.U.P. The alleged father of E.U.P. has never signed a declaration of parentage, completed genetic testing, or otherwise acknowledged paternity. After E.U.P. was born, the hospital placed her on a 72-hour health-and-welfare hold because hospital staff noticed that L.M.P. was attempting to remove E.U.P.'s feeding tube and because both L.M.P. and E.U.P. tested positive for PCP.[1] E.U.P.'s out-of-home placement began on January 15.

On January 21, 2016, the Hennepin County Human Services and Public Health Department (social-services agency) petitioned to terminate L.M.P.'s parental rights to E.U.P. on the grounds that L.M.P. is palpably unfit to be a party to the parent-child relationship. At an emergency-protective-care hearing held that same day, the district court relieved the social-services agency of the obligation to engage in reasonable efforts to prevent removal and for reunification because the petition stated a prima facie case that L.M.P.'s rights to two other children had been involuntarily terminated. The social-services agency nevertheless agreed to provide L.M.P. with a "minimal case plan" that required her to submit to urinalyses. The district court ordered E.U.P.'s continued out-of-home placement and further required the social-services agency to conduct a relative search. E.U.P. was ultimately moved to the same foster family as her minor sibling, E.P. Although E.U.P.'s sibling is related by blood, E.U.P.'s foster parents are not blood relatives.

---

[1] The tube is sometimes identified in the record as a breathing tube.

Between January and March 2016, L.M.P. missed over a dozen requested urinalyses. Of the three urinalyses she did provide, one was positive for PCP. L.M.P. was incarcerated at the beginning of April based on a felony charge of assaulting a peace officer. At the termination trial on June 2, L.M.P. expressed concern about E.U.P.'s foster placement. L.M.P. testified that she previously had told a social-services agency employee that she wanted E.U.P. to be placed with L.M.P.'s adult daughter or adult sister. The social worker assigned to E.U.P.'s case testified that a social-services agency employee did contact one relative, but the agency ultimately decided not to move E.U.P. because she was in foster care with her sibling. The social worker testified that, because the social-services agency considered E.U.P.'s placement with her sibling to be a "relative placement," the agency did not seek an alternative placement. At the end of trial, the district court asked the parties to submit written arguments regarding the legal effect that a relative search has on a termination decision.

The district court found by clear-and-convincing evidence that L.M.P. is palpably unfit to be a party to the parent-child relationship and that the termination of her parental rights is in E.U.P.'s best interests. The court also found that the social-services agency had exercised due diligence in conducting a relative search. The court concluded that, even if the department had not satisfied its relative-search obligations, an inadequate relative search is not a basis to deny a petition for termination of parental rights.

The district court denied L.M.P.'s posttrial motion for a new trial, and this appeal follows.

3

**D E C I S I O N**

An involuntary termination of parental rights is proper if: (1) clear-and-convincing evidence supports at least one statutory ground for termination; and (2) the termination of parental rights is in the child's best interests. *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 137 (Minn. 2014). "[An appellate court] review[s] the district court's findings to determine whether they address the statutory criteria for termination of parental rights and are not clearly erroneous." *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 660 (Minn. 2008). "A finding is clearly erroneous if it is either manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* at 660–61 (quotation omitted). "Nevertheless, [an appellate court] defer[s] to the district court's decision to terminate parental rights." *Id.* at 661. "[I]f at least one statutory ground alleged in the petition is supported by clear and convincing evidence and termination of parental rights is in the child's best interests, [an appellate court] will affirm." *Id.*

L.M.P. does not challenge the district court's determination that she is "palpably unfit to be a party to the parent and child relationship." *See* Minn. Stat. § 260C.301, subd. 1(b)(4) (2014). Rather, she challenges only the district court's best-interests finding.

In every termination-of-parental-rights proceeding, "the best interests of the child must be the paramount consideration." Minn. Stat. § 260C.301, subd. 7 (2014). Even if a statutory ground for termination exists, the district court must still find that termination of parental rights or of the parent-child relationship is in the child's best interests. *In re Children of T.A.A.*, 702 N.W.2d 703, 708 (Minn. 2005). Before terminating parental rights,

4

> the court shall make a specific finding that termination is in the best interests of the child and shall analyze:
>> (i) the child's interests in preserving the parent-child relationship;
>> (ii) the parent's interests in preserving the parent-child relationship; and
>> (iii) any competing interests of the child.

Minn. R. Juv. Prot. P. 39.05, subd. 3(b)(3); *see also In re Children of K.S.F.*, 823 N.W.2d 656, 668 (Minn. App. 2012) ("In considering the child's best interests, the district court must balance the preservation of the parent-child relationship against any competing interests of the child."). "Competing interests include such things as a stable environment, health considerations and the child's preferences." *K.S.F.*, 823 N.W.2d at 668 (quotations omitted). "Where the interests of parent and child conflict, the interests of the child are paramount." *Id.* (quoting Minn. Stat. § 260C.301, subd. 7) (quotation marks omitted).

"We review a district court's ultimate determination that termination is in a child's best interest for an abuse of discretion." *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 905 (Minn. App. 2011), *review denied* (Minn. Jan. 17, 2012). The district court abuses its discretion when it misapplies the law. *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 87 (Minn. App. 2012).

L.M.P. argues that the social-services agency performed an inadequate relative search, which she maintains is "a required finding for the best interests of the child in any permanency disposition order." To support her argument, she cites various juvenile-protection statutes that address the social-services agency's relative search and the child's best interests. *See* Minn. Stat. §§ 260C.193, subd. 3 (2014) (stating that it is "[t]he policy of the state to ensure that the best interests of children in foster care . . . are met by requiring

5

individualized determinations . . . of the needs of the child and of how the selected home will serve the needs of the child"), 260C.212, subds. 1(a), 2 (Supp. 2015) (requiring the agency to prepare an out-of-home placement plan and make placement decisions based on the best interests of the child), 260C.221(a) (Supp. 2015) (requiring the agency to "exercise due diligence to identify and notify adult relatives prior to placement or within 30 days after the child's removal from the parent"), 260C.511(b) (Supp. 2015) (stating that, when deciding whether to terminate parental rights, "the court must be governed by the best interests of the child, including a review of the relationship between the child and relatives").

But L.M.P. does not identify any statute that supports her contention that reversal is necessary. She instead maintains that

> when the child protection statutes are viewed as a whole, it is abundantly clear that the legislature deems placing a child with relatives—adults, related by blood or marriage who are capable of caring for and raising the child—is an express priority, benefit, and requirement, in determining the best interests of the child.

We disagree. The district court made detailed findings to support its conclusion that the termination of L.M.P.'s parental rights is in E.U.P.'s bests interests. Even if the social-services agency conducted an inadequate relative search, no statute or caselaw requires the district court to consider whether the agency's relative search was adequate before concluding that termination of parental rights is in the child's best interests. *Cf. In re Welfare of J.M.*, 574 N.W.2d 717, 722, 724 (Minn. 1998) (holding that a district court is not required to make findings regarding the adoptability of a child as part of its analysis of

6

whether termination is in the child's best interests); *J.K.T.*, 814 N.W.2d at 86 (stating that it "would exceed the limited error-correcting role of this court" to import into juvenile-protection proceedings the abatement doctrine used in certain other contexts).

Because no authority supports L.M.P.'s argument, we cannot say the district court abused its discretion when it determined that termination is in E.U.P.'s best interests. *See Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987) ("[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court."), *review denied* (Minn. Dec. 18, 1987).[2]

**Affirmed.**

---

[2] L.M.P. also suggests that the social-services agency did not adequately consider E.U.P.'s "religious and cultural needs" because E.U.P. is African American but was placed with a Caucasian foster family. *See* Minn. Stat. § 260C.212, subd. 2(b)(6). Because L.M.P. did not present the issue to the district court in her new-trial motion, it is forfeited. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).